Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

Jacob D. Shelly*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
jshelly@elias.law
age@elias.law

William Meheula (#2277)
**MEHEULA LAW**
500 Ala Moana Blvd., Suite 3-499
Honolulu, Hawaii 96813
(808) 628-7535
Bill@MeheulaLaw.com

*Counsel for Proposed Intervenor-Defendant*
*NAACP California-Hawaii State Conference*

*\* Pro Hac Vice Applications Forthcoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:25-cv-00522-LEK-RT |
| *Plaintiff,* | |
| v. | **NAACP CALIFORNIA-HAWAII STATE CONFERENCE'S MOTION TO INTERVENE AS DEFENDANT; MEMORANDUM IN SUPPORT OF MOTION; CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS; CERTIFICATE OF SERVICE** |
| SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii, | |
| *Defendant.* | |

Date/Time of Hearing: Unknown

District Judge: Hon. Leslie E. Kobayashi

Magistrate Judge: Hon. Rom Trader

Trial Date: None

## NAACP CALIFORNIA-HAWAII STATE CONFERENCE'S
## MOTION TO INTERVENE AS DEFENDANT

The NAACP California-Hawaii State Conference ("NAACP-CA/HI") respectfully requests that this Court grant it leave to intervene as a defendant in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, grant it permission to intervene under Rule 24(b).

In support of its Motion, NAACP-CA/HI submits and incorporates the below Memorandum of Points and Authorities, the Declaration of Rick Callender (attached as Exhibit A), a Proposed Answer submitted pursuant to Rule 24(c) (attached as Exhibit B), and a Proposed Order (attached as Exhibit C). Proposed Intervenors respectfully request that the Court set a hearing for this Motion as soon as practicable.

Dated: Honolulu, Hawaii, December 17, 2025

Respectfully submitted,

*/s/ William Meheula*
William Meheula (#2277)
**MEHEULA LAW**
500 Ala Moana Blvd., Suite 3-499
Honolulu, Hawaii 96813
(808) 628-7535
Bill@MeheulaLaw.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

Jacob D. Shelly*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
jshelly@elias.law
age@elias.law

*Counsel for Proposed Intervenor-Defendant
NAACP California-Hawaii State Conference*

*\* Pro Hac Vice Applications Forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff*,<br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>      *Defendant.* | Case No. 1:25-cv-00522-LEK-RT<br><br>**NAACP CALIFORNIA-HAWAII STATE CONFERENCE'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 3

    I.      Federal law has long made voter list maintenance a state
           responsibility, consistent with the constitutional separation of
           powers .................................................................................................. 3

    II.     The Department of Justice has embarked on an unprecedented
           campaign to amass personal voter registration data held by the
           states. ................................................................................................... 5

    III.    The Department of Justice sues Chief Election Officer Nago to
           obtain Hawaii's voter registration list. .................................................. 8

    IV.    DOJ's demand jeopardizes the sensitive personal information of
           NAACP-CA/HI's members ................................................................... 9

LEGAL STANDARD ..................................................................................... 12

ARGUMENT ................................................................................................. 13

    I.      NAACP-CA/HI is entitled to intervene as of right under Rule
           24(a)(2). .............................................................................................. 13

          A.     The motion is timely. ................................................................. 14

          B.     NAACP-CA/HI has an interest in protecting its
                 members' sensitive and personal information from
                 improper disclosure to DOJ, which is threatened by this
                 action. ........................................................................................ 15

          C.     The existing parties do not adequately represent NAACP-
                 CA/HI. ....................................................................................... 18

    II.     Alternatively, NAACP-CA/HI should be granted permissive
           intervention ......................................................................................... 22

CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
    No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) .....................23

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960)..................................................................9

*All. for Retired Ams. v. Bessent*,
    770 F. Supp. 3d 79 (D.D.C. 2025)..................................................................17

*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) ........................................................................18

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ........................................................................12

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013)..............................................................................................4

*Barke v. Banks*,
    No. 8:20-cv-00358, 2020 WL 2315857 (C.D. Cal. May 7, 2020) ...............21

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) ......................................................................20

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022).......................................................................... 3, 19, 20

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) .........................................................................15

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .........................................................................16

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
    42 F.4th 1013 (9th Cir. 2022) .............................................................. 22, 23

*Chiles v. Thornburgh*,
    865 F.2d 1197 (11th Cir. 1989) ............................................................. 15, 17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ................................................................. 16, 20

*City of Chicago v. FEMA*,
    660 F.3d 980 (7th Cir. 2011) .........................................................................21

*Clark v. Putnam County*,
    168 F.3d 458 (11th Cir. 1999) .......................................................................21

*Democratic Nat'l Comm. v. Reagan*,
    329 F. Supp. 3d 824 (D. Ariz. 2018) ...........................................................17

*Donald J. Trump for President, Inc. v. Bullock*,
    491 F. Supp. 3d 814 (D. Mont. 2020) ..........................................................17

*Foster v. Love*,
    522 U.S. 67 (1997).............................................................................................4

*Freedom from Religion Found. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) .........................................................................13

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003).......................................................................19

*GHP Mgmt. Corp. v. City of Los Angeles*,
    339 F.R.D. 621 (C.D. Cal. 2021)...................................................................21

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
    648 F. Supp. 3d 1196 (E.D. Cal. 2022) ........................................................18

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018)........................................................................................4, 5

*Issa v. Newsom*,
    2020 No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (2020)...............17

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 1:24-cv-01867, 2024 WL 3454706 (N.D. Ill. July 18, 2024)................21

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ........................................................................8

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ......................................................................19

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ......................................................................17

*League of Women Voters of N.C. v. North Carolina*,
    No. 1:13-cv-660, 2014 WL 12770081 (M.D.N.C. Jan 27, 2014) ................24

*March for Our Lives Idaho v. McGrane*,
    697 F. Supp. 3d 1029 (D. Idaho 2023) ......................................................18

*Mi Familia Vota v. Fontes*,
    719 F. Supp. 3d 929 (D. Ariz. 2024) ..........................................................18

*NAACP v. Alabama*,
    357 U.S. 449 (1958).....................................................................................11

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982).....................................................................................11

*Paher v. Cegavske*,
    No. 3:20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020)................17

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) ....................................................24

*Ramos v. Metro By T-Mobile*,
    2025 WL 1411341 (E.D. Cal. May 15, 2025)..............................................14

*Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*,
    2:19-cv-8612-PSG-JCX, 2020 WL 9460652 (C.D. Cal. Apr. 20, 2020)......23

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................................4

*San Jose Mercury News, Inc. v. U.S. District Court*,
    187 F.3d 1096 (9th Cir. 1999) ........................................................................13

*South Carolina v. United States*,
    585 F. Supp. 418 (D.D.C. 1984).....................................................................13

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..........................................................................12

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015).......................................................................13

Order, *United States v. Bellows*,
    No. 1:25-cv-00468 (D. Me. Dec. 12, 2025), ECF No. 49 ...............................3

Opinion, *United States v. Benson,*
    No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), ECF No. 45 .................. 2, 21

Minute Order, *United States v. Oliver*,
    No. 1:25-cv-01193 (D. N.M. Dec. 15, 2025), ECF No. 9..............................2

*United States v. Oregon*,
    No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025).... 2, 17, 21, 22

Minute Order, *United States v. Weber,*
    No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70.................... 2, 21

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) ..................................................................... 12, 14

*Washington v. U.S. Dep't of Transp.*,
    No. 25-CV-00848-TL, 2025 WL 3023041 (W.D. Wash. Oct. 29, 2025) .....14

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ................................................................. 15, 16

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ................................................................. 17, 18

**Constitutional Provisions, Statutes, And Rules**

U.S. Const. art. 1, § 4, cl. 1 ................................................................4

52 U.S.C. § 20501(b) ................................................................4

52 U.S.C. § 20507(a) ................................................................4

52 U.S.C. § 20507(g) ................................................................4

52 U.S.C. § 21083(a) ................................................................4, 5

Haw. Rev. Stat. 11.97(a) ................................................................6

Fed. R. Civ. P. 24(a) ................................................................3

Fed. R. Civ. P. 24(b) ................................................................22

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §
1909 (3d ed. 2024) ................................................................19

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
Build National Voter Roll*, N.Y. Times (Sep. 9, 2025),
https://perma.cc/8VP4-WRXD ................................................................5

H.R. Rep. 86-956 (1959) ................................................................8

*Justice Department Sues Oregon and Maine for Failure to Provide Voter
Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025),
https://perma.cc/2F92-EEXT ................................................................7

*Justice Department Sues Six Additional States for Failure to Provide Voter
Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025),
https://perma.cc/3C7K-MXQC ................................................................7

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J ...... 7

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice, https://perma.cc/W66R-UJXN ...................................................... 5, 6

Kevin Dayton, *Federal DOJ Sues Hawaiʻi For Refusing To Provide Voter Data*, Honolulu Civ. Beat (Dec. 12, 2025), https://perma.cc/7928-SPY5 ...... 8

**INTRODUCTION**

The Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to amass a wide array of highly sensitive personal information about voters in a centralized database. Although nearly all of the states have refused to turn over confidential voter information protected by state law, DOJ has initiated a series of lawsuits against a subset of these states, seeking to judicially compel their compliance. Among the newest tranche of these lawsuits is this one, which DOJ initiated against Hawaii's Chief Election Officer Scott T. Nago on December 11, 2025. As in the nearly identical lawsuits that DOJ brought against more than a dozen states before it, DOJ asks this Court to compel the production of Hawaii's complete and unredacted voter registration list, which contains sensitive and private information about every voter in the state. Unlike in several of its earlier lawsuits, however, DOJ has abandoned two of its prior three claims, and now alleges only that it is entitled to this information under the Civil Rights Act of 1960, purportedly to investigate suspected violations of two other federal laws: the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). DOJ's claims are meritless, and this assault intrudes not only on Hawaii's constitutional prerogative to maintain and protect its own voter registration list but also on the privacy of individual Hawaii voters who have good reason to fear their personal information being handed over to the federal government.

1

Proposed Intervenor NAACP California-Hawaii State Conference ("NAACP-CA/HI") is a state unit of the NAACP, the nation's oldest organization dedicated to the advancement of fundamental civil rights. Callender Decl. ¶ 3. NAACP-CA/HI has over 100 dues-paying members in Hawaii and maintains a branch in Hawaii. *Id.* ¶ 5. NAACP-CA/HI seeks to intervene in this lawsuit to preserve the privacy rights of its members, constituents, board members, and staff, whose private and personal data is the target of DOJ's demands, as well as to protect its own mission-critical efforts to empower its communities worried about retaliation and scrutiny by the federal government.

NAACP-CA/HI was previously granted intervention to defend against a virtually identical DOJ lawsuit seeking California's voter file also presently pending in federal court. *See* Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70. Similarly, multiple other federal courts have allowed civil rights groups to intervene as defendants in DOJ's parallel suits in other states. *See generally United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to Oregon social welfare organization); Opinion, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), ECF No. 45 (granting intervention as of right to Michigan social welfare organization and voters); Minute Order, *United States v. Oliver*, No. 1:25-cv-01193 (D. N.M. Dec. 15, 2025), ECF No. 9 (granting intervention to New

Mexico social welfare organization); Order, *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Dec. 12, 2025), ECF No. 49 (granting intervention to voters). NAACP-CA/HA qualifies for intervention here for the same reasons.

Indeed, NAACP-CA/HI readily satisfies the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a). It has a clear interest in ensuring the continued privacy of its members' personal information, and that interest could be severely impaired by this suit. While Chief Election Officer Nago is a governmental defendant who must consider the "broader public-policy implications" of the issues presented in this suit, NAACP-CA/HI is solely concerned with protecting its members' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)). Federal courts routinely grant intervention to intervenors like NAACP-CA/HI to ensure that individual rights are zealously defended.

Alternatively, NAACP-CA/HI should be granted permissive intervention under Rule 24(b) to ensure that Hawaii voters have a voice in this case, the core subject of which is the disclosure of *their* personal information.

## BACKGROUND

I.  **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state

3

legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The NVRA tellingly charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists, *see Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter lists, requiring they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A),

(a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

Neither the NVRA nor HAVA tasks the *federal government* with compiling a federal voter registration list. Instead, Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II. The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter such as date of birth, driver's license number, and social security number. DOJ has reportedly sent demands to at least forty states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used in attempts to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[2] The vast majority of states have refused to comply, appropriately declining to turn

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice, https://perma.cc/W66R-UJXN; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] Barrett & Corasantini, *supra* note 1.

5

over sensitive personal information that is typically protected by state law.[3] Hawaii law, for example, provides confidentiality protections for sensitive personal information provided on a voter registration affidavit. Haw. Rev. Stat. § 11-97(a).

Nevertheless, as part of this broader pressure campaign, DOJ set its sights on Hawaii. On September 8, 2025, DOJ sent a letter to Chief Election Officer Nago asking for "a copy of Hawaii's statewide voter registration list" within 14 days. Mem. in Support of Mot. to Compel Production ("DOJ Mem."), Ex. 1 at 1, ECF No. 5-2. DOJ was explicit that the list produced by Hawaii "should contain *all fields*" and "must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]" DOJ Mem., Ex. 1 at 1. Hawaii's Deputy Solicitor General Thomas J. Hughes responded to the September 8 letter on September 22. DOJ Mem., Ex. 2 at 1, ECF No. 5-2. That response explained that state law requires that personal information provided on a voter registration affidavit be kept confidential and that DOJ's request, which seems to be part of a strategy to establish a national voting databases, "raises additional privacy concerns and appears unrelated to the stated purpose of the request, which is to ensure Hawaii's compliance with the NVRA and HAVA." DOJ Mem., Ex. 2 at 1–3.

---

[3] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 1 (reporting that thus far only two states—Indiana and Wyoming—appear to have given DOJ everything it sought).

Around the same time as DOJ was making these demands of Hawaii, it made similar demands to scores of other states, the vast majority of which have refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some—but not all—of these states. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the information it sought under three statutes: the NVRA, HAVA, and the Civil Rights Act of 1960.[4] On September 25, DOJ filed another set of lawsuits, this time against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[5] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in states that are exempt from the NVRA. On December 2, DOJ announced that it had sued a third group of states— Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[6] Unlike the earlier suits, however, in that third group of complaints, the DOJ alleged only one claim, asserted under the Civil Rights Act of 1960.

---

[4] *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 16, 2025), https://perma.cc/2F92-EEXT.

[5] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/PE2W-7F9J.

[6] *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC.

### III. The Department of Justice sues Chief Election Officer Nago to obtain Hawaii's voter registration list.

This lawsuit comes in DOJ's *fourth* wave of suits against states.[7] Filed on December 11, it asks the Court to command Chief Election Officer Nago to produce Hawaii's full, unredacted voter registration list. *See generally* Compl., ECF No. 1. As with the last tranche of these suits, DOJ does not bring any claims under either HAVA or the NVRA (as it did in the first two iterations of these actions). Instead, it alleges only a single count: that, in refusing to fully comply with DOJ's requests, Chief Election Officer Nago violated Section 303 of the Civil Rights Act of 1960.

This Civil Rights-era law permits DOJ to review certain records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted Section 303 to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. 86-956, at 7 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the

---

[7] Kevin Dayton, *Federal DOJ Sues Hawaiʻi For Refusing To Provide Voter Data*, Honolulu Civ. Beat (Dec. 12, 2025), https://perma.cc/7928-SPY5. The states sued in this round are Colorado, Massachusetts, and Nevada.

right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961).

DOJ, however, admits that it is *not* seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, DOJ claims to be evaluating Hawaii's list-maintenance efforts under the NVRA and HAVA. Compl. at 4–5. These are laws with their own separate procedures and enforcement mechanisms. Yet DOJ does not allege any claims under either here. Rather, in this case, DOJ hangs its hat solely on Section 303 of the Civil Rights Act of 1960. But Section 303 is not a roving authorization for the federal government to demand any voter information it wants from any state for any purpose the federal government can conceivably concoct. Accordingly, Section 303 does not require the disclosure DOJ seeks here.[8]

## IV. DOJ's demand jeopardizes the sensitive personal information of NAACP-CA/HI's members.

The NAACP is the nation's oldest organization dedicated to the advancement of civil rights in the United States. Callender Decl. ¶ 3. Founded in 1909 by pioneers of racial justice, the NAACP's core mission has long been to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human

---

[8] Moreover, even if Section 303 did apply, it would not prohibit Hawaii from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, as permitted under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. *Id.* The NAACP is a formal membership organization, with more than 200,000 members nationwide. *Id.* NAACP-CA/HI has over 100 dues-paying members in Hawaii and maintains a branch in Hawaii. *Id.* ¶ 5. NAACP-CA/HI works to ensure political, educational, and economic justice for Black Hawaiians and other marginalized groups. *Id.* ¶ 4. NAACP-CA/HI has a long history of fighting for and protecting fundamental rights and the voting rights of its members and constituents—including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 4, 7–8. NAACP-CA/HI and its local branches and chapters operate and support programs that encourage members and other Hawaii voters to participate in elections and provide assistance to voters in doing so. *Id.* ¶ 8. These efforts often include, for example, events that assist previously incarcerated citizens whose civil rights have been restored with registering and casting ballots. *See id.* ¶ 8. Additionally, some of NAACP-CA/HI's voter registration and engagement efforts include working with naturalized immigrants and first-generation U.S. citizens—groups that have faced adverse action from the current administration. *Id.* ¶¶ 11–12. When voters and potential voters in its membership and constituency face government actions that make it

harder to vote or discourage participation in the political process, its efforts to advance its mission suffer. *Id.* ¶¶ 11–14.

Over the years, the NAACP and its members have frequently been singled out by government officials who disagree with its mission, facing espionage and investigation—sometimes even physical violence—because of their advocacy efforts. *Id.* ¶¶ 11, 13. As a result, protecting its members and supporters from the unlawful disclosure of their personal information in response to government overreach has long been central to the NAACP's core mission and value system. *Cf. NAACP v. Alabama*, 357 U.S. 449 (1958); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). Many of NAACP-CA/HI's members fear retribution by the current federal administration and are concerned about DOJ's efforts to obtain their sensitive personal information. Callender Decl. ¶¶ 10–13. Indeed, many of NAACP-CA/HI's members have publicly advanced political views that are strongly at odds with the views and actions of the current President and his administration. *See id.* ¶ 10.

Unfortunately, the current administration has made clear that it is willing to use all the tools at DOJ's disposal to accomplish political goals, including by targeting individual citizens. *Id.* Consequently, if DOJ succeeds in obtaining the sensitive data it seeks in this lawsuit, NAACP-CA/HI will be forced to contend with a growing distrust of the government and hesitance among members and constituents to actively participate in the political process. *Id.* ¶¶ 12–13. Thus, DOJ's effort to

obtain Hawaii's complete voter registration data threatens the fundamental privacy

and voting rights of NAACP-CA/HI's members and NAACP-CA/HI's mission-

critical programs. *Id.* ¶¶ 12–14.

## LEGAL STANDARD

A movant has a right to intervene under Rule 24(a)(2) when it satisfies four

requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must
> have a significantly protectable interest relating to the property or
> transaction that is the subject of the action; (3) the applicant must be
> situated such that the disposition of the action may impair or impede the
> party's ability to protect that interest; and (4) the applicant's interest must
> not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

The Ninth Circuit has adopted a policy of "interpret[ing] these requirements

broadly in favor of intervention," guided by "practical considerations, not technical

distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022)

(quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897

(9th Cir. 2011)). And courts must "take all well-pleaded, nonconclusory allegations

in the motion to intervene, the proposed complaint or answer in intervention, and

declarations supporting the motion as true absent sham, frivolity or other

objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir.

2001). A party who satisfies each of these requirements must be permitted to

intervene. *Arakaki*, 324 F.3d at 1083.

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1100 (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not intend to assert additional "new claims" for relief: (1) the motion must be timely and (2) the applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).[9]

## ARGUMENT

### I.    NAACP-CA/HI is entitled to intervene as of right under Rule 24(a)(2).

NAACP-CA/HI satisfies the standards for intervention as a matter of right because its motion is timely, the prospect of an adverse ruling threatens to impair its members' fundamental privacy and voting rights—as well as its own mission-critical voter-engagement programs—and none of the existing government parties adequately represent its distinct, privately held interests.[10]

---

[9] Proposed Intervenor submits a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

[10] NAACP chapters are regularly granted intervention to protect the fundamental rights of their members as well as their mission-critical election-related work—including in cases identical to the one here. *See, e.g.*, Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting intervention to groups including NAACP and NAACP-CA/HI in nearly identical lawsuit brought by DOJ); *South Carolina v. United States*, 585 F. Supp. 418, 419 (D.D.C. 1984) (noting intervention of NAACP as defendant); *Texas v. United States*,

### A.    The motion is timely.

NAACP-CA/HI's Motion—filed a mere six days after DOJ brought suit and before any case schedule has been set—is indisputably timely. To make this determination, courts consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project*, 22 F.4th at 835–36. Here, DOJ filed suit on December 11, and this motion follows just six days later—before any schedule has been set, before Defendant has answered, and before any substantive proceedings. *Washington v. U.S. Dep't of Transp.*, No. 25-CV-00848-TL, 2025 WL 3023041, at *8 (W.D. Wash. Oct. 29, 2025) (motion timely where defendants had not answered and no dispositive motions filed). Moreover, because no case schedule has yet been set and no substantive events have yet occurred in the case, there is no risk of prejudice to the existing parties. *See Ramos v. Metro By T-Mobile*, No. 2:24-CV-03062-DJC-CKD, 2025 WL 1411341, at *2 (E.D. Cal. May 15, 2025) (finding no prejudice where intervention request came "at a very early stage in the litigation, before any hearings or rulings on substantive matters"). NAACP-CA/HI further agrees to abide by any schedule set by the Court or the existing parties.

---

798 F.3d 1108, 1111–12 (D.C. Cir. 2015) (noting intervention of Texas NAACP branches as defendants).

**B.     NAACP-CA/HI has an interest in protecting its members' sensitive and personal information from improper disclosure to DOJ, which is threatened by this action.**

NAACP-CA/HI also satisfies the "closely related" second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989); *see Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting *Moore's Federal Practice* § 24.03[2][c] (3d ed. 2008)).

Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" that interest. *Lockyer*, 450 F.3d at 442. Applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation modified).

NAACP-CA/HI has significant and protectable interests in preserving the privacy rights of its members and in mobilizing voters free from fears of intimidation or harassment. Callender Decl. ¶ 8. NAACP-CA/HI directs its voter registration and engagement efforts towards communities that already face significant barriers to voting, including naturalized and first-generation U.S. citizens. *Id*. ¶ 11. In view of the current administration's harsh treatment of immigrant communities and of those it disagrees with, many voters in this group—even those plainly qualified to vote—may reasonably be hesitant to engage in the political process if it means inviting federal scrutiny and retaliation against their families and communities. *Id*. ¶¶ 11–12. The fear and distrust sown by DOJ's aggressive demands for personal information therefore directly frustrates NAACP-CA/HI's mission-critical work. *Id*. ¶¶ 13–14.

16

Courts regularly grant intervention, including in nearly identical lawsuits to this one, to allow organizations to protect their own mission-critical organizational activities, particularly when it comes to ensuring their members and constituents' ability to vote. *Oregon*, 2025 WL 3496571, at *1 (granting intervention as of right to social-welfare organization in parallel DOJ suit because "the outcome of this litigation will directly affect the protectable privacy interests" asserted); *see, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see also, e.g.*, *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 827 (D. Mont. 2020) (holding organization had "representational [and] direct organizational standing" based on threatened harm to voters); *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305–06 (5th Cir. 2022) (holding political party organization had "legally protectable interest" because it spends "resources in the recruiting and training of volunteers").

In fact, courts have routinely found these interests satisfy even the "more stringent" requirements for establishing an Article III injury. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see Chiles*, 865 F.2d at 1212–14 & n.16 (cautioning there is "less reason to be as finicky" in assessing an intervenor's interests than a plaintiff's asserted injury (citation omitted)); *see also, e.g.*, *All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 101–03 (D.D.C. 2025); *Democratic Nat'l Comm. v.*

*Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (concluding organization had injury sufficient to confer standing where challenged law would require it "to retool [its] [get-out-the-vote] strategies and divert . . . resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs,* 948 F.3d 989 (9th Cir. 2020) (en banc); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 983–87 (D. Ariz. 2024) (finding organizations had standing to protect members' voting rights), *aff'd in relevant part* 129 F.4th 691 (9th Cir. 2025); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1039 (D. Idaho 2023) (similar); *cf. Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021). That the threat to NAACP-CA/HI satisfies the more demanding Article III injury standard "compels the conclusion that they have an adequate interest" under Rule 24(a)(2). *Yniguez*, 939 F.2d at 735. The unredacted statewide voter list that DOJ demands includes precisely the personal information that NAACP-CA/HI and its members have interests in protecting. For this simple reason, if DOJ prevails in this action and gets access to this information, those interests will be impaired.

### C.    The existing parties do not adequately represent NAACP-CA/HI.

The existing parties do not adequately represent the interests of NAACP-CA/HI. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal.

2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983));
*see Berger*, 597 U.S. at 196  (citing *Trbovich,* 404 U.S. at 538 n.10 (1972)). Courts
are "liberal in finding" this requirement satisfied, recognizing "there is good reason
in most cases to suppose that the applicant is the best judge of the representation of
the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, *Federal
Practice & Procedure* § 1909 (3d ed. 2024).

     Here, DOJ naturally does not represent NAACP-CA/HI's interests, as it seeks
to forcibly compel production of Hawaii's unredacted voter registration list. And
while Hawaii's Chief Elections Officer Nago, to date, has resisted that demand, he
too does not adequately represent NAACP-CA/HI's distinct private interests.
Federal courts have "often concluded that governmental entities do not adequately
represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*,
322 F.3d 728, 736 (D.C. Cir. 2003). A governmental defendant's interests are
"necessarily colored by its view of the public welfare rather than the more parochial
views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S.
Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining the burden in these
circumstances is "comparatively light"). Simply put, "the government's
representation of the public interest may not be 'identical to the individual parochial
interest' of a particular group just because 'both entities occupy the same posture in

the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like NAACP-CA/HI—seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if Chief Elections Officer Nago's *objective* is to oppose the relief that DOJ seeks, he does not necessarily share the same *interests* as a private organization committed protecting its members and ensuring their voter engagement and turnout. *See id.*

Indeed, the NVRA requires Defendant to "balance *competing* objectives"— maintaining accurate and current rolls while promoting access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (emphasis added). NAACP-CA/HI is focused entirely on maintaining the privacy of sensitive personal information, voting rights, and its mission-critical voter-engagement programs. Callender Decl. ¶¶ 4, 7–8, 15. Accordingly, its interests are not adequately

20

represented. *See, e.g.*, *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quoting *Arakaki*, 324 F.3d at 1087)); *Barke v. Banks*, No. 8:20-cv-00358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases). Further still, government defendants—including in disputes over voter rolls—sometimes settle due to competing interests. Courts routinely find inadequate representation where it is possible an existing defendant will resolve a case on terms that proposed intervenors would not agree to. *E.g.*, *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-01867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024); *see also City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999).

Indeed, multiple courts have very recently granted intervention to other advocacy groups in identical litigation brought by the DOJ against other states based on this very logic. *Oregon*, 2025 WL 3496571, at *2; Opinion, *Benson*, No. 1:25-cv-01148 (W.D. Mich. Dec. 9, 2025), ECF. No. 45 (granting intervention as of right); Minute Order, *Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (permissive intervention). As the court in Oregon explained, state "Defendants have obligations under the NVRA and HAVA that Proposed

Intervenor[] do[es] not share and have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenor[] would not make." *Oregon*, 2025 WL 3496571, at *2. Because NAACP-CA/HI asserts those same interests and the exact same dynamic is present here, this Court should reach the same conclusion.

## II.    Alternatively, NAACP-CA/HI should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: NAACP-CA/HI assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). NAACP-CA/HI moved promptly, *see supra* Argument § I.A, and agrees to abide by any schedule set by the Court or agreed to by the original parties—meaning there will be no delay or prejudice. And NAACP-CA/HI's defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. B (Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can consider in weighing permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including NAACP-CA/HI's interests, the inadequacy of the

representation of those interests, and NAACP-CA/HI's contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, NAACP-CA/HI seeks to defend the personal privacy interests of its members, as well as organizational interests unique to civic organizations. *See supra* Argument § I.B. *Second*, these parochial interests are not identical to the public interests of the existing, governmental defendant, and may not be fully advanced absent its intervention. *See supra* Argument § I.C. *Finally*, the harms that vulnerable voters face and the arguments that NAACP-CA/HI advances on their behalf will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Given that this action threatens to compel the disclosure of personal data of hundreds of thousands of Hawaii voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing parties who specifically represent the interests of those voters to participate. *See Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*, 2:19-cv-8612-PSG-JCX, 2020 WL 9460652, at *1 (C.D. Cal. Apr. 20, 2020). For similar reasons, courts have routinely granted permissive intervention to civic organizations to ensure their voices are heard when litigation implicates the rights and privacy of all voters. *See, e.g.*, *1789 Found. Inc.*

*v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene).

In short, because Rule 24 is liberally construed to protect NAACP-CA/HI's rights and interests, and because its participation will assist rather than prejudice efficient development and resolution of this matter, the Court should grant permissive intervention in the event it does not find that NAACP-CA/HI may intervene as a matter of right.

## CONCLUSION

For all of the foregoing reasons, NAACP-CA/HI respectfully requests that the Court grant it intervention as of right—or in the alternative grant permissive intervention—to allow it to protect the significant interests it has at stake in this case.

Dated: Honolulu, Hawaii, December 17, 2025.

Respectfully submitted,

*/s/ William Meheula*
William Meheula (#2277)
**MEHEULA LAW**
500 Ala Moana Blvd., Suite 3-499
Honolulu, Hawaii 96813
(808) 628-7535
Bill@MeheulaLaw.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

Jacob D. Shelly*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
jshelly@elias.law
age@elias.law

*Counsel for Proposed Intervenor-Defendant
NAACP California-Hawaii State Conference*

*\* Pro Hac Vice Applications Forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:25-cv-00522-LEK-RT |
| Plaintiff, | |
| v. | **CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS** |
| SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii, | |
| Defendant. | |

The foregoing memorandum does not exceed the twenty-five (25) page limit of LR 7.4(a) and does not contain more than 6,250 words, in compliance with LR 7.5(b). According to the computer software used to generate the document, this memorandum contains 5,737 words.

Dated: Honolulu, Hawaii, December 17, 2025.

*/s/ William Meheula*
William Meheula (#2277)
**MEHEULA LAW**
500 Ala Moana Blvd., Suite 3-499
Honolulu, Hawaii 96813
(808) 628-7535
Bill@MeheulaLaw.com

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:25-cv-00522-LEK-RT |
| *Plaintiff*, | |
| v. | **CERTIFICATE OF SERVICE** |
| SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii, | |
| *Defendant*. | |

I hereby certify that a copy of the foregoing document will be served on all parties in accordance with Fed. R. Civ. P. 5(a).

Dated: Honolulu, Hawaii, December 17, 2025.

*/s/ William Meheula*
William Meheula (#2277)
**MEHEULA LAW**
500 Ala Moana Blvd., Suite 3-499
Honolulu, Hawaii 96813
(808) 628-7535
Bill@MeheulaLaw.com

1