**ACLU of Hawai'i Foundation**
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM
11020
P.O. Box 3410
Honolulu, HI 96801
T: (808) 380-2671
F: (808) 522-5909
ehills@acluhawaii.org
wkim@acluhawaii.org

*motion for pro hac vice admission
forthcoming*

*Counsel for Proposed Intervenor-
Defendants*

**American Civil Liberties Union
Foundation**
MEGAN C. KEENAN*
915 15th St. NW
Washington, DC 20001
T: (347) 714-1530
F: (332) 234-9285
mkeenan@aclu.org

**American Civil Liberties Union
Foundation**
THERESA J. LEE*
SOPHIA LIN LAKIN*
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2500
F: (332) 234-9285
tlee@aclu.org
slakin@aclu.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>*Defendant.* | No. 1:25-cv-00522-LEK-RT<br><br>**MOTION OF COMMON CAUSE, NEIL ABERCROMBIE, AND KATHERINE HAMMES TO INTERVENE AS DEFENDANTS; MEMORANDUM IN SUPPORT OF MOTION; CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS; CERTIFICATE OF SERVICE**<br><br><u>Date/Time of Hearing</u>: TBD<br><u>Judge</u>: Hon. Leslie E. Kobayashi<br><u>Trial Date</u>: TBD<br><u>Related</u>: n/a |

### MOTION OF COMMON CAUSE, NEIL ABERCROMBIE, AND KATHERINE HAMMES TO INTERVENE AS DEFENDANTS

Common Cause, Neil Abercrombie, and Katherine Hammes (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. *See* LR7-2(a). This Motion is made following communication with counsel for the United States pursuant to LR7.8, which took place on December 16–17, 2026. The United States has expressed no position regarding this Motion to Intervene.

Proposed Intervenors append to this motion, as Exhibit 1, a proposed motion to dismiss by way of a response to the United States' complaint, while reserving the right to supplement their response to the complaint within the time allowed for response by Rule 12 if intervention is granted. *See* Fed. R. Civ. P. 24(c).

Proposed Intervenors further attach the following exhibits for the Court's consideration: the declaration of Camron Hurt (attached as Exhibit 2); the declaration of Neil Abercrombie (attached as Exhibit 3); the declaration of Katherine Hammes (attached as Exhibit 4); a memorandum of understanding created by the U.S. Department of Justice (attached as Exhibit 5); and a hearing transcript and an order from *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025) (attached as Exhibits 6 and 7, respectively).

Dated: Honolulu, Hawaiʻi, January 14, 2025.

Respectfully submitted,

*/s/ Emily M. Hills*
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM
11020
ACLU of Hawaiʻi Foundation
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
wkim@acluhawaii.org
ehills@acluhawaii.org

MEGAN C. KEENAN*
American Civil Liberties Union
Foundation
915 15th St. NW
Washington, DC 20001
T: (347) 714-1530
F: (332) 234-9285
mkeenan@aclu.org

THERESA J. LEE*
SOPHIA LIN LAKIN*
American Civil Liberties Union
Foundation
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2500
F: (332) 234-9285
tlee@aclu.org
slakin@aclu.org

*Application for pro hac vice admission
forthcoming*

*Attorneys for Proposed Intervenors
Common Cause, Neil Abercrombie, and
Katherine Hammes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff*,<br><br>  v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>      *Defendant*. | No. 1:25-cv-00522-LEK-RT<br><br>**MEMORANDUM OF COMMON CAUSE, NEIL ABERCROMBIE, AND KATHERINE HAMMES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS**<br><br><u>Date/Time of Hearing</u>: TBD<br><u>Judge</u>: Hon. Leslie E. Kobayashi<br><u>Trial Date</u>: TBD<br><u>Related</u>: n/a |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................3

I.    DOJ's Efforts to Obtain Private Voter Information from Hawaiʻi ................3

II.    Proposed Intervenors.................................................................10

ARGUMENT ................................................................................13

I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT. ................................................................................13

A.    The Motion to Intervene Is Timely. .........................................13

B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation.................................................................14

C.    Officer Nago's Interests Are Different from Those of Proposed Intervenors. .................................................................18

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION ........................................................21

CONCLUSION ................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Berger v. North Carolina State Conference of the NAACP*,
   597 U.S. 179 (2022) ........................................................................... 13, 20

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) ........................................................................17

*California ex rel. Lockyer v. United States*,
   450 F.3d 436, 442 (9th Cir. 2006) ..............................................................17

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F.4th 1013 (9th Cir. 2022) .....................................................................22

*Ceja-Corona v. CVS Pharmacy, Inc.*,
   No. 12-cv-1868, 2014 WL 792132 (E.D. Cal. Feb. 26, 2014) ..................23

*Citizens for Balanced Use v. Montana Wilderness Association*,
   647 F.3d 893 (9th Cir. 2011) ................................................................ 19, 21

*Civil Beat Law Center for the Public Interest, Inc. v. City & County of Honolulu*,
   144 Haw. 466, 445 P.3d 47 (2019) .............................................................15

*Donald J. Trump for President, Inc. v. Boockvar*,
   No. 4:20-cv-2078, 2020 WL 8262029 (M.D. Pa. Nov. 12, 2020) .............18

*Donaldson v. United States*,
   400 U.S. 517 (1971) .....................................................................................14

*Grutter v. Bollinger*,
   188 F.3d 394 (6th Cir. 1999) .......................................................................17

*Issa v. Newsom*,
   No. 20-cv-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ................14

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
   No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ...................20

*Judicial Watch, Inc. v. Pennsylvania*,
   No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020) ...............................................23

*Kalbers v. U.S. Department of Justice*,
    22 F.4th 816 (9th Cir. 2021)........................................................ 13, 14, 15

*Kobach v U.S. Election Assistance Commission*,
    No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ................... 18, 20

*Pennsylvania Fair Elections v. Pennsylvania Department of State*,
    337 A.3d 598 (Pa. Commw. Ct. 2025)........................................................9

*Public Interest Legal Foundation, Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020)................................................18

*Republican National Committee v. Aguilar*,
    No. 24-cv-518, 2024 WL 3409860 (D. Nev. July 12, 2024) ....................... 23, 24

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015) ............................................................18

*Tirrell v. Edelblut*,
    No. 24-cv-251, 2025 WL 1939965 (D.N.H. July 15, 2025) ...............................23

*T-Mobile Northeast LLC v. Town of Barnstable*,
    969 F.3d 33 (1st Cir. 2020) ..............................................................19

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972) ..........................................................................19

*United States v. Aerojet General Corp.*,
    606 F.3d 1142 (9th Cir. 2010)..............................................................14

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002)................................................................13

*Western Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022)................................................................14

*Wilderness Society v. U.S. Forest Service*,
    630 F.3d 1173 (9th Cir. 2011)..............................................................13

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991)................................................................14

iv

**Statutes**

5 U.S.C. § 552a ........................................................................................................15

52 U.S.C. § 20703 ............................................................................................ 17, 21

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still
Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025,
https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-
security.html ........................................................................................................8

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications
Fizzle*, SPOTLIGHT PA, Nov. 8, 2024,
https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-
pennsylvania-fair-elections/ ................................................................................9

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build
National Voter Roll*, N.Y. Times, (Sept. 9, 2025),
https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-
data.html .........................................................................................................5, 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.
TIMES MAG. (Nov. 16, 2025),
https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
department-staff-attorneys.html ..........................................................................8

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National
Citizenship Data System*, NPR, June 29, 2025,
https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-
voting-database ..................................................................................................8

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice
Department Requests for Voter Information, Brennan Center for Justice (updated
Dec. 19, 2025),
https://perma.cc/A4A4-737Z ..............................................................................3

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for
Voting*, DEMOCRACY DOCKET, June 12, 2025,

https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/..........................................8

Press Release, *U.S. Department of Justice, Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC...................................................................6

Press Release, *U.S. Department of Justice, Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A ..................................................................6

Press Release, *U.S. Department of Justice, Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ ..................................................................6

Press Release, *U.S. Department of Justice, Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC ..................................................................6

Press Release, *U.S. Department of Justice, Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD..................................................................6

Press Release, *U.S. Department of Justice, Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA ..................................................................6

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025 ..........................................................................7

## Rules

Federal Rule of Civil Procedure 24 ..................................................... 2, 3, 13, 22, 24

## INTRODUCTION

The United States seeks to force Hawaiʻi to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential removal from state voter rolls and disenfranchisement. *See infra* at 6–7. Those efforts are being driven by self-styled "election-integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present Administration. *See infra* at 7–8. And the United States' own representations to states tend to confirm those suspicions about federal overreach here. *See infra* at 9.

Proposed Intervenors are Common Cause, a nonpartisan, good-government organization dedicated to grassroots voter engagement both nationally and specifically in Hawaiʻi, whose members and whose own work are at risk by the relief sought by the United States in this case, as well as Neil Abercrombie and Katherine Hammes, Hawaiʻi voters whose personal, private data is at risk in this litigation. Proposed Intervenors have a strong interest in preventing disclosure of the most sensitive aspects of Hawaiʻi's non-public voter data. Common Cause has an interest in protecting the voting and privacy rights of its members and all Hawaiʻi voters. The relief the federal government seeks risks discouraging Hawaiʻi residents from

registering to vote, undermining its work. And the privacy and voting-rights interests of Common Cause's members and of the individual voter intervenors are also directly at stake. Proposed Intervenors and Common Cause members include people who are uniquely vulnerable to being wrongly removed from the voter rolls based on imperfect data matching systems, including naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); voters with felony convictions (who may have been previously ineligible to vote before having their rights restored); and voters who have moved within Hawaiʻi or left the state and then returned to Hawaiʻi (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system).

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by the existing Defendant, who, unlike Proposed Intervenors, is a state actor subject to broader public policy and political considerations outside of the legal issues presented in this case. Their unique interests, perspective, and motivation to interrogate the purpose of the United States' sweeping request for non-public voter data in this case will ensure the full development of the record and aid the Court in its resolution of this case. Indeed, in similar cases brought over other states' refusal to turn over sensitive voter information, similar organizations and individuals have been granted intervention.

*See* Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70. This Court should grant intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b).

## BACKGROUND

### I.    DOJ's Efforts to Obtain Private Voter Information from Hawaiʻi

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of statewide voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On September 8, 2025, DOJ sent such a letter to Hawaiʻi Chief Elections Officer Scott T. Nago ("the Officer"), demanding an electronic copy of Hawaiʻi's entire statewide voter registration database. *See* Compl. ¶¶ 19–21; Ex. 1 to U.S. Mot.

to Compel, Letter from Harmeet K. Dhillon to Scott T. Nago at 2–4 (Sept. 22, 2025), Dkt. No. 5-2 ("DOJ Ltr."). DOJ specified that it was seeking an unredacted electronic copy of the statewide voter registration list that "contain[s] *all fields*," including "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Compl. ¶ 20; DOJ Ltr. at 2-3. DOJ cited the National Voter Registration Act ("NVRA"), Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960 ("CRA") for authority for its records request, and stated that "[t]he purpose of this request is to ascertain Hawaii's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further in this regard or refer to any compliance deficiencies by Hawaiʻi with respect to those statutes' voter list maintenance requirements. Compl. ¶¶ 19–21; DOJ Ltr. 2-3. DOJ requested that this full and unredacted copy of Hawaiʻi's state voter registration list be provided within fourteen days. *Id.*

Officer Nago responded on September 22, 2025. *See* Compl. ¶ 22; Ex. 2 to U.S. Mot. to Compel, Letter from Scott T. Nago to Harmeet K. Dhillon at 6–8 (Sept. 22, 2025), Dkt. No. 5-2 ("HI SOS Ltr."). In declining to transmit the requested information on the immediate basis DOJ demanded, the Officer addressed DOJ's claimed sources of authority—the NVRA, HAVA, and the CRA—and why these did not authorize the demand for a full and unredacted copy of Hawaiʻi's state voter

registration list. *Id.* at 2. Relevant here, the Officer took the position that any demand under the CRA "must 'contain a statement of the basis and the purpose therefor,'" and that DOJ had not explained "why the production of personal information about every registered Hawai'i voter is necessary to achieve the stated purpose" of evaluating Hawai'i's compliance with list maintenance requirements in the NVRA and HAVA. HI SOS Ltr. at 7. The Officer also expressed concerns about whether DOJ's request "complies with the Privacy Act's requirements," particularly in light of reporting indicating that "requests like the one received by Hawai'i" were "part of an 'effort to essentially establish a national voting database[.]'" *Id.* at 7–8 (quoting Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://archive.is/CMnNA). The Officer said that the Hawai'i Office of Elections and Department of the Attorney General would continue to evaluate DOJ's letter. *See id.* at 8.

On December 1, 2025, DOJ's "new contact for the Voting Section" sent a follow-up email, indicating that he was "not aware of" the Officer's September 22 letter and seeking a position on DOJ's September 8 letter. Ex. 3 to U.S. Mot. to Compel, Email from Eric Neff to elections@hawaii.gov at 10 (Dec. 1, 2025), Dkt. No. 5-2 ("DOJ Email"). DOJ also attached a proposed memorandum of understanding for Hawai'i's consideration to address "potential concerns a state might rightfully raise regarding its citizens' private data and identifying

information." *Id.*; Compl. ¶ 25; *see also, e.g.*, Ex. 5, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU").[1] One of Hawaiʻi's Deputy Solicitors General responded, attaching the Officer's September 22 letter and clarifying that Hawaiʻi's basis for declining to produce the requested records was outlined in the September 22 letter. Ex. 3 to U.S. Mot. to Compel, Emails from Thomas J. Hughes to Eric Neff at 12 (Dec. 1, 2025), Dkt. No. 5-2 ("HI Emails").

The United States responded by filing this lawsuit, which is one of at least twenty-four that DOJ has initiated recently to compel states and election officials to disclose sensitive voter data.[2] The United States concurrently filed a motion to

---

[1] In addition to incorporating the MOU by reference in its Complaint, Compl. ¶ 25, the United States has represented in court that it intended for a number of States to sign MOUs as to its requests for state voter files, Ex. 6, Hr'g Tr. at 72–73, 90, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025) (DOJ attorney discussing MOU), and a version of the MOU sent to other states has become publicly available. *See* MOU.

[2] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

compel the production of records—namely, "an electronic copy of the Hawaii statewide Voter Registration List with all fields, including each registrant's name, date of birth, address, and as required by HAVA, the last four digits of the registrant's social security number, driver's license/state identification number or the unique HAVA identifier." U.S. Mot. to Compel, Dkt. No. 5 at 4.

DOJ's request for private, sensitive voter data appears to be in connection with never-before-seen efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize voter rolls. According to reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating these efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*[3] A recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the government's aims in these lawsuits:

---

[3] *See also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/ magazine/trump-justice-department-staff-attorneys.html.

According to additional reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside government who have previously sought to disenfranchise voters and overturn elections.[4] Such actors have previously sought to compel states to engage in aggressive purges of registered voters and have abused voter data to mass challenge voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d

---

[4] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/ 2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials).

598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Heather Honey, challenging Pennsylvania's list maintenance practices, was meritless).[5]

The Administration has also confirmed that it was sharing the requested information with DHS.[6] And DOJ's actions also indicate that it may target specific groups of voters in its use of the requested data. In its letters requesting private voter data from other states, DOJ has also requested information about how elections officials, among other things, identify and remove duplicate registrations and verify that registered voters are not ineligible to vote, such as due to a felony conviction, citizenship status, or having moved out of state.[7] Many of these same voters are uniquely vulnerable to being wrongly removed from the voter rolls based on

---

[5] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections").

[6] Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

[7] *See* Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1; Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3; Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1; Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2.

imperfect data matching systems, including naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); voters with felony convictions (who may have been previously recorded as ineligible to vote before having their rights restored); and voters who have moved within Hawaiʻi or left the state and then returned to Hawaiʻi (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system).

Notably, the United States' own representations to states tend to confirm suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, the United States' proposed MOU seeks to place authority to identify supposed ineligible voters in the hands of the federal government, and requires removal of supposedly ineligible voters within 45 days—directly contrary to those statutes' text. *Compare* MOU at 2, 5, *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"), and, *e.g.*, 52 U.S.C. § 20507 (protecting voters from removal under certain circumstances).

## II.    Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Hawaiʻi voters register to vote and exercise their right of suffrage at each election. *See* Ex. 2, Decl. of Hawaiʻi Program Director for Common Cause Camron Hurt ("Hurt Decl.") ¶¶ 3, 5–7, 9–10. Common Cause

expends significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote. *See* Hurt Decl. ¶¶ 8–9, 12. The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See* Hurt Decl. ¶¶ 9–11.

Common Cause also has more than 4,500 members in Hawaiʻi. *See* Hurt Decl. ¶ 4. Those members include Hawaiʻi voters whose personal data will be provided to the federal government if DOJ prevails in this lawsuit. *See* Hurt Decl. ¶ 6. Common Cause's members in Hawaiʻi include voters who are at particular risk of being caught up in the DOJ's efforts to remove voters from voter rolls because, *e.g.*, they lack stable housing or traditional addresses. *See* Hurt Decl. ¶¶ 4, 6, 10–11.

Proposed Intervenor Neil Abercrombie is an eligible, registered Hawaiʻi voter who formerly served as the seventh Governor of Hawaiʻi. Ex. 3, Decl. of Neil Abercrombie ("Abercrombie Decl.") ¶¶ 4–5. Governor Abercrombie has been a Hawaiʻi resident for more than 60 years, and he regularly votes in local, state, and federal elections. *Id.* ¶¶ 2, 5. If the United States can compel production of the entire unredacted Hawaiʻi voter file, Governor Abercrombie would be concerned about the

11

privacy of his and other voters' sensitive information, including because of the ability to use that data to retaliate against voters for political purposes. *Id.* ¶¶ 6–8.

Proposed Intervenor Katherine Hammes is also an eligible, registered Hawaiʻi voter. Ex. 4, Decl. of Katherine Hammes ("Hammes Decl.") ¶ 3. Ms. Hammes has been a Hawaiʻi resident since 1988, and she became a naturalized United States citizen in 1992. *Id.* ¶¶ 3–4. She registered to vote as soon as she became a citizen and has regularly voted in local, state, and federal elections since then. *Id.* ¶ 4. Voting is very important to Ms. Hammes, whose experiences being born in Sout Africa and being a woman taught her not to take access to the franchise for granted. *Id.* ¶ 5. Ms. Hammes has grave concerns about the federal government's efforts to gain access to voters' sensitive personal information, both because of her previous experience as a victim of identity theft and other unwanted disclosure of her personal records, and because she did not expect that choosing to exercise her right to vote would place her at risk of surveillance, reprisal, or other reckless uses of her sensitive personal data by the federal government. *Id.* ¶¶ 6–9. Moreover, as someone who lived in Hawaiʻi for several years before becoming naturalized, Ms. Hammes anticipates that the state may be in possession of records about her from the years when she was a non-citizen (including her first driver's license), and she does not want the state's sharing of her records to be misused or misunderstood by the federal government to wrongly indicate that she is ineligible to vote. *Id.* ¶ 10.

# ARGUMENT

## I.  MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Proposed Intervenors are entitled to intervene as of right. Rule 24(a)(2) provides that courts "must permit anyone to intervene" who:

(1) on timely motion,

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,

(3) unless existing parties adequately represent that interest.

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quotation marks and alterations omitted); *see also Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). Courts generally construe Rule 24(a) "broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, Court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely.

Courts consider three "primary factors" in evaluating timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quotation marks and citation omitted).

13

As with the Rule 24(a) inquiry more generally, the Ninth Circuit interprets these factors "broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

This motion is timely. The United States filed this suit on December 11, 2025, Dkt. 1, and upon receiving notice of the suit, Proposed Intervenors promptly prepared this motion. *See Kalbers*, 22 F.4th at 825 (interval of "just a few weeks" "weigh[ed] in favor of timeliness"); *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (motion to intervene was timely where it was filed within four months of when applicants learned of proposed consent decree); *Issa v. Newsom*, No. 20-cv-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (finding motion timely where "no substantive proceedings ha[d] occurred"). Further, Officer Nago has not yet filed an answer or a motion to dismiss, meaning that the case is at its earliest stage and intervention will not unduly delay or prejudice existing parties.

### B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971).[8] To

---

[8] This interest requirement is less stringent than the injury-in-fact requirement for purposes of establishing Article III standing. *See Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

demonstrate a "significantly protectable interest" relating to the subject matter of the action, the intervenor must (1) assert "an interest that is protected under some law," and (2) show that "there is a relationship between its legally protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827 (quotation marks and citation omitted). Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Proposed Intervenors have a right to privacy in the sensitive data the United States seeks, *i.e.*, voters' full name, date of birth, residential address, and driver's license number or SSN4. DOJ Ltr. at 2. The Hawaiʻi Constitution provides Hawaiʻi residents with an informational right to privacy that protects against disclosure of their sensitive personal information. *See Civ. Beat L. Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu*, 144 Haw. 466, 480, 445 P.3d 47, 61 (2019). The data sought is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). These privacy interests are significant and inure to Neil Abercrombie, Katherine Hammes, and to Common Cause's members that are

registered Hawaiʻi voters. Hurt Decl. ¶¶ 4, 6, 10–13; Abercrombie Decl. ¶¶ 5–10; Hammes Decl. ¶¶ 3–10.

*Second*, and based on the United States' similar data requests to other States, the data sought is likely to be used to challenge the registration of certain Hawaiʻi voters, including voters who are naturalized citizens. *See supra* 8–9. Katherine Hammes and some of Common Cause's members fall within these categories. *See* Hammes Decl. ¶¶ 2–4; Hurt Decl. ¶¶ 4, 6, 10–11. Ms. Hammes and Common Cause's members, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised. *See* Hammes Decl. ¶¶ 2–4, 10; Hurt Decl. ¶¶ 6, 10–13.

*Third*, Common Cause has protectable interests at stake because its core organizational mission will be harmed if the relief sought is granted. Common Cause's core civic participation and engagement activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government and potentially misused as part of a national database. *See, e.g.*, Hurt Decl. ¶¶ 9–13. Mass challenges by election integrity activists now wielding the power of the federal government would force Common Cause to redirect resources to mitigating the attempted disenfranchisement of existing voters, away from core civic engagement. *Id.* ¶¶ 10–12.

16

The litigation may result in an order that directly affects these interests. To prevail here, intervenors "do not need to establish that their interests *will* be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (internal citations omitted). "This burden is minimal." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quotation marks and citation omitted). Once intervenors establish that they have a significant protectable interest, courts typically "have little difficulty concluding that the disposition" of the case "may, as a practical matter, affect [that interest]." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Here, the threat of impairment is significant. The United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel, Dkt. No. 2. This attempt to secure the irrevocable disclosure of private voter data at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests.

Courts routinely find that nonpartisan public interest organizations, like Common Cause, should be granted intervention in election-related cases, due to their significantly protectable interests related to voting. *See, e.g.*, *Texas v. United States*,

798 F.3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013). This case is no exception. Indeed, in similar cases challenging states' refusal to turn over sensitive voter information, Common Cause, similar organizations, and individual voters have been granted intervention. *See* Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70.

### C.    Officer Nago's Interests Are Different from Those of Proposed Intervenors.

Courts in this Circuit consider three factors in evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893,

898 (9th Cir. 2011) (quotation marks and citation omitted). Proposed Intervenors'

"burden of making [this] showing should be treated as minimal," and Proposed

Intervenors need not show that representation of their interests *will* be inadequate,

but rather only that "representation [of their interests] *may be* inadequate." *Trbovich

v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added).

Proposed Intervenors meet this minimal burden here. As a government

official, Officer Nago has a generalized interest in carrying out his office's legal

obligations and in minimizing burdens on governmental employees and resources.

He also must consider broader public policy concerns, including the need to maintain

working relationships with federal officials. In contrast, Proposed Intervenors bring

a distinct, particular interest to this litigation, making the existing representation

inadequate: the perspective of civil rights groups whose sole commitment is to

ensuring access to the ballot and individual voters whose own rights are at risk. *See

T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020).

Defendant might not raise arguments and issues that are critical to Proposed

Intervenors. For example, individual voters have a more direct injury than states

under the Privacy Act for misuse of their personal data, especially given that the

Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C.

§ 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of

this section . . . in such a way as to have an adverse effect on an individual, the

individual may bring a civil action against the agency"). As another example, courts have found that political considerations external to the legal issues presented by cases like this can motivate elections officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger*, 597 U.S. at 198 (reversing denial of motion to intervene where board of elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups"); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged

20

communities, may have private interests that diverge from the public interest of an elections agency). Put simply, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (internal citation omitted). Such is the case here.

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest as a good-government, pro-democracy organization in pursuing this highly relevant line of factual inquiry and argument is further strong grounds to support intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Should the Court decline to grant intervention as of right, the Court should use its broad discretion to grant permissive intervention. The Court may utilize its broad discretion to grant permissive intervention when the movant files "a timely motion" and raises a claim or defenses that share "a common question of law and

fact" with the "main action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (internal quotation marks and citation omitted). "In exercising its discretion," a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Other factors that courts often evaluate include "the nature and extent of the intervenors' interest," the "legal position [the intervenors] seek to advance," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (citation omitted).

Permissive intervention is appropriate here. As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as (1) whether federal law permits the United States to force Hawai'i to give it the personal information it seeks; (2) whether legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the

issues and the quality of the record, aiding the Court in resolving the issues before it. The proposed "intervention would not add any new issues to this litigation"; instead, Proposed Intervenors are trying to offer their unique perspective, including the perspective of people likely to be improperly flagged as ineligible to vote, to resolve the existing ones. *Ceja-Corona v. CVS Pharmacy, Inc.*, No. 12-cv-1868, 2014 WL 792132, at *3 (E.D. Cal. Feb. 26, 2014).

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); *Judicial Watch, Inc. v. Pennsylvania*, No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 at 3 (granting permissive intervention in NVRA case to Common Cause and League of Women Voters of Pennsylvania upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (quotation marks, citation, and footnote omitted)).

The recent *Republican National Committee v. Aguilar* decision is instructive on this point. No. 24-cv-518, 2024 WL 3409860 (D. Nev. July 12, 2024). There, various groups sought to intervene in a case where plaintiffs sought to "compel the State to remove from the [voter] rolls voters whom they claim[ed were] ineligible"

to vote. *Id.* at *1, *3. The court granted permissive intervention, finding intervenors would "contribute to the just and equitable resolution of the issues before" it because they had a "singular purpose" of "ensur[ing] voters [were] retained on or restored to the rolls," which provided a "counterbalance" to plaintiffs that the State could not provide due to its "split mission" of "easing barriers to registration and voting" and "protecting electoral integrity." *Id.* The same reasoning applies here. As such, if it does not grant intervention as of right, this Court should exercise its discretion to allow permissive intervention under Rule 24(b).

## CONCLUSION

For all these reasons, the Motion should be granted.

Dated: Honolulu, Hawaiʻi, January 14, 2025.

Respectfully submitted,

*/s/ Emily M. Hills*
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM 11020
ACLU of Hawaiʻi Foundation
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
wkim@acluhawaii.org
ehills@acluhawaii.org

MEGAN C. KEENAN*
American Civil Liberties Union Foundation
915 15th St. NW
Washington, DC 20001
T: (347) 714-1530
F: (332) 234-9285
mkeenan@aclu.org

THERESA J. LEE*

SOPHIA LIN LAKIN*
American Civil Liberties Union
Foundation
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2500
F: (332) 234-9285
tlee@aclu.org
slakin@aclu.org

*Application for pro hac vice admission
forthcoming*

*Attorneys for Proposed Intervenors
Common Cause, Neil Abercrombie, and
Katherine Hammes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>*Defendant*. | No. 1:25-cv-00522-LEK-RT<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS** |

The foregoing memorandum does not exceed the twenty-five (25) page limit of LR 7.4(a) and does not contain more than 6,250 words, in compliance with LR 7.5(b). According to the computer software used to generate the document, this memorandum contains 5,847 words.

/s/ Emily M. Hills
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM 11020
ACLU of Hawaii Foundation
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
ehills@acluhawaii.org
wkim@acluhawaii.org