**ACLU of Hawai'i Foundation**
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM
11020
P.O. Box 3410
Honolulu, HI 96801
T: (808) 380-2671
F: (808) 522-5909
ehills@acluhawaii.org
wkim@acluhawaii.org

*motion for pro hac vice admission
forthcoming*

*Counsel for Proposed Intervenor-
Defendants*

**American Civil Liberties Union
Foundation**
MEGAN C. KEENAN*
915 15th St. NW
Washington, DC 20001
T: (347) 714-1530
F: (332) 234-9285
mkeenan@aclu.org

**American Civil Liberties Union
Foundation**
THERESA J. LEE*
SOPHIA LIN LAKIN*
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2500
F: (332) 234-9285
tlee@aclu.org
slakin@aclu.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>*Defendant*. | No. 1:25-cv-00522-LEK-RT<br><br>**[PROPOSED] MOTION TO DISMISS OF INTERVENOR-DEFENDANTS OF COMMON CAUSE, NEIL ABERCROMBIE, AND KATHERINE HAMMES; CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS**<br><br><u>Date/Time of Hearing</u>: TBD<br><u>Judge</u>: Hon. Leslie E. Kobayashi<br><u>Trial Date</u>: TBD<br><u>Related</u>: n/a |

# EXHIBIT 1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

LEGAL STANDARD............................................................................7

ARGUMENT .......................................................................................8

  I.    THE UNITED STATES' DEMANDS EXCEED THE STATUTORY
  AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW........................8

    A.   The United States' Demand for Records Fails to Meet the Requisite
    Statutory Requirements of the CRA...................................................9

    B.   Any Records Disclosed Under the CRA Should Be Redacted to
    Protect the Constitutional Rights of the Voter. ...................................16

  II.   THE UNITED STATES IS NOT ENTITLED TO SUMMARY
  DISPOSITION OF ITS CRA CLAIM...............................................19

CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960)........................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................7, 8

*Becker v. United States*,
  451 U.S. 1306 (1981)........................................................................................22

*Burdick v. Takushi*,
  504 U.S. 428 (1992)............................................................................................1

*Civil Beat Law Center for the Public Interest, Inc. v. City & County of Honolulu*,
  144 Haw. 466, 445 P.3d 47 (2019)......................................................................17

*Coleman v. Kennedy*,
  313 F.2d 867 (5th Cir. 1963)..............................................................................10

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
  603 U.S. 799 (2024)............................................................................................14

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010)..............................................................................8

*Crystal v. United States*,
  172 F.3d 1141 (9th Cir. 1999)............................................................................13

*Federal Housing Finance Agency v. SFR Investments Pool 1, LLC*,
  No. 2:17-cv-00914-GMN-PAL, 2018 WL 1524440 (D. Nev. Mar. 27, 2018).....13

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
  63 F.4th 747 (9th Cir. 2023)................................................................................8

*In re Coleman*,
  208 F. Supp. 199 (S.D. Miss. 1962)........................................................ 10, 18, 21

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962)........................................... 10, 19, 20, 21, 22, 23, 24

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) .................................................................................14

*No Labels Party of Arizona v. Fontes*,
    142 F.4th 1226 (9th Cir. 2025) ................................................................1

*Project Vote/Voting for America, Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ..................................................................17

*Public Interest Legal Foundation v. Benson*,
    136 F.4th 613 (6th Cir. 2025) ................................................................12

*Public Interest Legal Foundation v. Boockvar*,
    431 F. Supp. 3d 553 (M.D. Pa. 2019) ...................................................17

*Public Interest Legal Foundation, Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ............................................................. 17, 18

*Public Interest Legal Foundation, Inc. v. Dahlstrom*,
    673 F. Supp. 3d 1004 (D. Alaska 2023) ................................................17

*Public Interest Legal Foundation, Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ....................................................17

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
    996 F.3d 257 (4th Cir. 2021) ..................................................................17

*Sheetz v. County of El Dorado*
    601 U.S. 267 (2024) ...............................................................................19

*United States v. Hernandez*,
    322 F.3d 592 (9th Cir. 2003) ..................................................................16

**Statutes**

18 U.S.C. § 2721 ...........................................................................................23

26 U.S.C. § 7604 ...........................................................................................22

44 U.S.C. § 3351 ...........................................................................................23

5 U.S.C. § 552a .............................................................................................14

52 U.S.C. § 20501 ...........................................................................................3

52 U.S.C. § 20507 ..........................................................................7, 11, 12, 15, 16

52 U.S.C. § 20701 ................................................................................... 3, 10

52 U.S.C. § 20703 ........................................................................ 2, 9, 10, 16, 22

52 U.S.C. § 20705 ........................................................................................ 22, 23

52 U.S.C. § 20901 ...........................................................................................3

52 U.S.C. § 21083 ....................................................................................11, 15

52 U.S.C. § 21085 ....................................................................................11, 15

52 U.S.C. § 21085 ...........................................................................................7

E-Government Act of 2002,
    Pub. L. No. 107-347, 116 Stat. 2899 (2002)........................................................23

Privacy Act of 1974,
    Pub. L. No. 93-579, 88 Stat. 1896 (1974)..........................................................23

**Other Authorities**

"Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER,
    https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025) ...................................20

Brief for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc.
    v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011) ......................................................18

Brief for the United States as Amicus Curiae, *Pub. Int. Legal Found. v. Schmidt*,
    No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ......................18

Brief for the United States as Amicus Curiae, *Pub. Int. Legal Found., Inc. v.
    Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27-28 .....18

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.
    TIMES MAG. (Nov. 16, 2025),
    https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
    department-staff-attorneys.html..........................................................................6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice
    Department Requests for Voter Information, Brennan Center for Justice (updated
    Dec. 19, 2025),
    https://perma.cc/A4A4-737Z ....................................................................2

Press Release, U.S. Dep't of Justice, *United States Announces Settlement with
    Kentucky Ensuring Compliance with Voter Registration List Maintenance
    Requirements*
    (July 5, 2018) ..........................................................................................13

Press Release, U.S. Department of Justice, *Justice Department Sues Arizona and
    Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026),
    https://perma.cc/6QP2-8ZXC ..................................................................5

Press Release, U.S. Department of Justice, *Justice Department Sues Four
    Additional States and One Locality for Failure to Comply with Federal Elections
    Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A ...........................5

Press Release, U.S. Department of Justice, *Justice Department Sues Four States
    for Failure to Produce Voter Rolls* (Dec. 18, 2025),
    https://perma.cc/HHJ7-JWQQ ................................................................5

Press Release, U.S. Department of Justice, *Justice Department Sues Oregon and
    Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),
    https://perma.cc/M69P-YCVC .................................................................5

Press Release, U.S. Department of Justice, *Justice Department Sues Six Additional
    States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025),
    https://perma.cc/F5MD-NWHD ...............................................................5

Press Release, U.S. Department of Justice, *Justice Department Sues Six States for
    Failure to Provide Voter Registration Rolls* (Sept. 25, 2025),
    https://perma.cc/7J99-WGBA..................................................................5

Steven F. Lawson,
    *Black Ballots: Voting Rights in the South, 1944-1969* (1976).............................20

U.S. Department of Justice, Civil Rights Division, *Federal Law Constraints on
    Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH........... 1, 21

**Rules**

Fed. R. Civ. P. 12 .................................................................................. 7, 15

Fed. R. Civ. P. 56 ....................................................................................15

# INTRODUCTION

In this action, the United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted, and its attempt to summarily dispose of this case via an improper motion to compel should be rejected.

The right to vote is "of the most fundamental significance under our constitutional structure." *No Labels Party of Ariz. v. Fontes*, 142 F.4th 1226, 1231 (9th Cir. 2025) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice has explained, Title III of the Civil Rights Act of 1960, the provision invoked here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., C.R. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960); H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for Hawaiʻi's unredacted voter file—which contains sensitive personal information such as full birth dates and driver's license numbers or partial Social Security numbers from every voter in the state— is contrary to law and undermines the CRA's core purposes. Releasing voter records

1

without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here, where the United States has not fully and accurately set forth "the basis and the purpose" for its data request, as required by the very statute it invokes. 52 U.S.C. § 20703. Because the United States has failed to establish its entitlement to the complete, unredacted Hawai'i voter file, the Court should dismiss this action.

## BACKGROUND

In May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least 40 states, making escalating demands for production of statewide voter registration databases. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On September 8, 2025, DOJ sent such a letter to Hawai'i Chief Elections Officer Scott T. Nago ("the Officer"), demanding an electronic copy of Hawai'i's entire statewide voter registration database. *See* Compl. ¶¶ 19-21; Ex. 1 to U.S. Mot. to Compel, Letter from Harmeet K. Dhillon, DOJ Assistant Attorney General, to Scott T. Nago, Hawai'i Chief Election Officer, at 2-4 (Sept. 8, 2025), Dkt. No. 5-2 ("DOJ Ltr."). DOJ specifically sought an unredacted electronic copy of the statewide voter registration list that "contain[s] *all fields*," including "full name, date of birth,

residential address, his or her state driver's license number or the last four digits of the registrant's social security number." DOJ Ltr. at 2-3; *see also* Compl. ¶ 20. DOJ cited three sources of authority—the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.; the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq*.; and Title III of the Civil Rights Act of 1960 ("CRA" or "Title III"), 52 U.S.C. § 20701 *et seq*.—for its records request, and stated that "[t]he purpose of this request is to ascertain Hawaii's compliance with the list maintenance requirements of the NVRA and HAVA," but did not elaborate further in this regard or refer to any compliance deficiencies by Hawaiʻi with respect to those statutes' voter list maintenance requirements. DOJ Ltr. 2-3; *see* Compl. ¶¶ 19-20. DOJ requested that this full, unredacted copy of Hawaiʻi's state voter registration list be provided within fourteen days. *Id.*

Officer Nago's office responded on September 22, 2025. *See* Compl. ¶ 22; Ex. 2 to U.S. Mot. to Compel, Letter from Thomas J. Hughes, Hawaiʻi Deputy Solicitor General, to Harmeet K. Dhillon at 6-8 (Sept. 22, 2025), Dkt. No. 5-2 ("HI Ltr."). The Officer addressed DOJ's claimed sources of authority and why these did not authorize the demand for a full, unredacted copy of Hawaiʻi's state voter registration list. *Id.* at 7. Relevant here, the Officer took the position that any demand under the CRA "must 'contain a statement of the basis and the purpose therefor,'" and that DOJ had not explained "why the production of personal information about every

3

registered Hawai'i voter is necessary to achieve the stated purpose" of evaluating Hawai'i's compliance with list maintenance requirements in the NVRA and HAVA. HI Ltr. at 7 (citing 52 U.S.C. § 20701). The Officer also expressed concerns about whether DOJ's request "complies with the Privacy Act's requirements," particularly in light of reporting indicating that "requests like the one received by Hawai'i" were "part of an 'effort to essentially establish a national voting database[.]'" *Id.* at 7-8 (citation omitted. The Officer said the Hawai'i Office of Elections and Department of the Attorney General would continue to evaluate DOJ's letter. *See id.* at 8.

On December 1, 2025, DOJ's "new contact for the Voting Section" sent a follow-up email, indicating he was "not aware of" the Officer's September 22 letter and seeking a position on DOJ's September 8 letter. Ex. 3 to U.S. Mot. to Compel, Email from Eric Neff to elections@hawaii.gov at 10 (Dec. 1, 2025), Dkt. No. 5-2 ("DOJ Email"). DOJ also attached a proposed memorandum of understanding for Hawai'i's consideration (which DOJ did not include as an exhibit, but which has been made publicly available elsewhere, *see infra* at 14-15) to address "potential concerns a state might rightfully raise regarding its citizens' private data and identifying information." *Id.*; Compl. ¶ 25; *see also, e.g.*, Ex. 5 to Mot. to Intervene, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU").[1] One

---

[1] In addition to incorporating the MOU by reference in its Complaint, Compl. ¶ 25, the United States has represented in court that it intended for a number of States to sign MOUs as to its requests for state voter files, Ex. 6 to Mot. to Intervene, Hr'g

of Hawai'i's Deputy Solicitors General responded, clarifying that Hawai'i's basis for declining to produce the requested records was outlined in the September 22 letter, which it attached. Ex. 4 to U.S. Mot. to Compel, Emails from Thomas J. Hughes to Eric Neff at 12 (Dec. 2, 2025), Dkt. No. 5-2 ("HI Emails").

The United States responded by filing this lawsuit, which is one of at least twenty-four that DOJ has initiated recently to compel states and election officials to disclose sensitive voter data.[2] The United States concurrently filed a motion to compel the production of records—namely, "an electronic copy of the Hawaii statewide Voter Registration List with all fields, including each registrant's name, date of birth, address, and as required by HAVA, the last four digits of the registrant's

---

Tr. at 72-73, 90, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025) (DOJ attorney discussing MOU), and a version of the MOU sent to other states has become publicly available. *See* MOU.

[2] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

social security number, driver's license/state identification number or the unique HAVA identifier." U.S. Mot. to Compel, Dkt. No. 5 at 4.

DOJ's request for private, sensitive voter data appears to be in connection with never-before-seen efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize voter rolls. *See* Mot. to Intervene at 7-10 & nn.3-7. DOJ is coordinating these efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.* A lawyer who recently left DOJ's Civil Rights Division has described the government's aims in these lawsuits as follows:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Mot. to Intervene at 8-9 & nn.4-5. And DOJ's actions also indicate that it may target specific groups of voters in its use of the requested

data, including voters who are uniquely vulnerable to being wrongly removed from the voter rolls based on imperfect data matching systems, such as naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization) and voters who have moved within Hawaiʻi or left the state and then returned to Hawaiʻi (but might be deemed "duplicate" or "out-of-state" voters due to a shoddy matching system). *Id.* at 9-10 & n.7.

Notably, the United States' own representations to states tend to confirm suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, the United States' proposed MOU seeks to place authority to identify supposed ineligible voters in the hands of the federal government, and requires removal of supposedly ineligible voters within 45 days—directly contrary to those statutes' text. *Compare* MOU at 2, 5, *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"), and, *e.g.*, 52 U.S.C. § 20507 (protecting voters from removal under certain circumstances).

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, a court need not accept the complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

complaint must state a "plausible claim for relief" and contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79.

Thus, in practice, while courts "accept all factual allegations as true and view them in the light most favorable to Plaintiffs," they do not "blindly defer to the labels and conclusions provided by the complaint, nor to any naked assertions devoid of further factual enhancement." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023) (quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks omitted). To perform this review, courts can also "consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## ARGUMENT

### I.    THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW.

The United States' demand for Hawaiʻi's full and unredacted electronic voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956, at 7

8

(1959) (indicating Title III's purpose "is to provide a more effective **protection** of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The United States' records request is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Hawaiʻi's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" of its records requests. *Second*, any records to which the United States may be entitled should be redacted to vindicate the privacy and constitutional rights of Hawaiʻi voters. Nothing in the CRA prevents appropriate redaction of the sensitive personal information of voters. As a result, the United States is not entitled to its requested relief.

### A.    The United States' Demand for Records Fails to Meet the Requisite Statutory Requirements of the CRA.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians.

9

52 U.S.C. § 20701. Section 303 provides that, upon submitting a written demand that "*shall* contain a statement of *the basis <u>and</u> the purpose* therefor,*" the Attorney General or her representative must be permitted to inspect, reproduce, and copy such records or papers. *Id.* § 20703 (emphases added).

The federal government's requests to Hawai'i fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id*. Contemporaneous case law immediately following Title III's enactment shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation of the law. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III have consistently been treated as distinct concepts. *See id.*; *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). As set forth below, the United States' failure to articulate both a sufficient "basis" and "purpose" underlying its request for the unredacted voter file warrants dismissal of the CRA claim.

The DOJ Letter states that the "purpose" of its request for Hawai'i's complete and current voter registration list was to "ascertain Hawaii's compliance with the list maintenance requirements of the NVRA and HAVA." DOJ Ltr. 3; *see* Compl. ¶ 19. But neither the United States' complaint nor its letter invoking the CRA supplies a

10

"basis" for why the United States believes Hawaiʻi's list maintenance procedures might violate the NVRA, HAVA, or the CRA in the first place. Nor does the Complaint (or the DOJ Letter or emails) allege anomalies or anything inconsistent with reasonable list maintenance efforts in the data Hawaiʻi has reported to the U.S. Election Assistance Commission. *See* Compl. ¶¶ 9-26; DOJ Ltr.; DOJ Email.

Moreover, even if the United States had provided a proper "basis" for its demand—and it did not—it fails to explain any connection between its purported "purpose" and the vast scope of its records request here. For example, it does not attempt to explain why the full and unredacted Hawaiʻi statewide voter file is necessary to determine whether Hawaiʻi has "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507(a)(4); *see* Compl. ¶ 12. And in fact, such records are not necessary: A single snapshot of a state's voter list does not and could not provide the information needed to determine if the state has made a "reasonable effort" to remove ineligible voters under Section 8 of the NVRA. Compl. ¶ 12; 52 U.S.C. § 20507(a)(4)(A)-(B). The NVRA and HAVA both leave the mechanisms for conducting list maintenance within the discretion of the State. *See* 52 U.S.C. §§ 20507(a)(4) & (c)(1), 21083(a)(2)(A), 21085. The *procedures* carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were the United States to use voter file data to

11

identify voters who had moved or died on Hawaiʻi's voter list at a single point in time, that would not amount to Hawaiʻi failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624-27 (6th Cir. 2025) (describing "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting "quantifiable, objective standard"), *petition for cert. filed* (U.S. Oct. 7, 2025) (No. 25-437).[3]

The CRA's basis and purpose requirements are critical safeguards. They prevent the statute from being used as a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. For example, in addressing an analogous power by which the IRS obtains records for investigations via administrative subpoenas, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted

---

[3] Indeed, the inclusion at any particular point in time on Hawaiʻi's voter registration list of some voters who may have potentially moved out of state is to be expected, since Section 8(d) of the NVRA explicitly sets out a specific set of rules and requirements for removals from the voter rolls based on changes of residence, whereby states "shall not remove" voters on these grounds unless these voters directly confirm their change of residence in writing, or unless states first provide notice and then abide by a statutory waiting period until the second general federal election after providing notice. 52 U.S.C. § 20507(d).

for a legitimate purpose," *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)), and that the administrative subpoena "may not be so broad as to be in the nature of a fishing expedition." *Fed. Housing Fin. Agency v. SFR Invests. Pool 1, LLC*, No. 2:17-cv-00914-GMN-PAL, 2018 WL 1524440, at *7 (D. Nev. Mar. 27, 2018) (citation and quotation marks omitted)).

As such, even if some portion of the voter file were necessary to investigate "Hawaii's compliance with federal election law," Compl. ¶ 19, the United States has not provided any justification for why the full unredacted voter file is necessary to carry out this purported purpose. For decades, DOJ has neither sought nor required a full and unredacted voter file in its investigations regarding NVRA compliance. *See, e.g.*, Press Release, U.S. Dep't of Just., *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZUUA5 (describing letters to all 44 states covered by the NVRA with requests for list maintenance information, but without demanding voter files). The United States' failure to articulate the basis and the purpose for demanding the full and unredacted voter file is ground to hold its demand insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that DOJ did not

13

disclose the main basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies. *See* Mot. to Intervene at 7-10 & nn.3-7 (describing this reporting in detail). The creation of such a database has never been authorized by Congress, and indeed likely violates the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (provision of federal Privacy Act prohibiting creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

DOJ's failure to fully and accurately provide this information is fatal to the United States' complaint. Section 303 of the CRA requires a statement of "*the* basis and *the* purpose" of a records request. By twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the* complete basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165-66 (2021); *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024). This is yet another ground for dismissal.

Even setting aside this fatal deficiency, NVRA and HAVA compliance also cannot be the true basis and purpose for the data requests at issue here based on the United States' own more recent statements to States in connection with the requests. Far from ensuring NVRA and HAVA compliance, the memorandum of understanding that DOJ proposed to Hawaiʻi and other states, *see* Compl. ¶ 25; DOJ

Email; MOU, actually *runs afoul* of those statutes. As noted, the NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls. 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A). Indeed, the NVRA itself is structured so that potentially ineligible voters *must* necessarily stay on the rolls for two election cycles so as to limit the likelihood of a state removing eligible voters by mistake. *Id.* § 20507(d)(1)(B). The MOU indicates multiple contemplated violations of those statutory requirements. First, the United States seeks to place authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to statutory text, *id.* § 21085 (methods of complying with HAVA "left to the discretion of the State"). MOU at 2, 5. Second, its substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a manner that would violate multiple protections of the NVRA, 52 U.S.C. § 20507. This MOU demonstrates that the United States' supposed purpose is not in compliance with federal law but aggrandizes authority to a federal agency in ways contrary to federal law.

Under the circumstances here, the United States' invocation of Title III of the CRA fails in myriad ways to provide a sufficient "statement of the basis and the purpose" for its demand and does not comply with the CRA. Dismissal is proper.[4]

---

[4] Dismissal on the grounds set forth above would also be proper under Federal Rule of Civil Procedure 12(c) or after discovery regarding the United States' purported basis and purpose for its requests pursuant to Federal Rule of Civil Procedure 56.

**B.    Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter.**

Even if disclosure were appropriate, sensitive personal voter information—in this case, Social Security and driver's license numbers—would still be subject to redaction, which is not barred under Title III. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). But courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote, *see United States v. Hernandez*, 322 F.3d 592, 594-95 (9th Cir. 2003), and federal courts throughout the country have consistently struck this balance by interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and protection of confidential materials.

As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks

16

implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264, 266-68 (4th Cir. 2021). Other courts have consistently recognized that the NVRA does not compel the release of sensitive information that is otherwise protected by federal or state laws.[5] And in Hawaiʻi, the state constitution likewise provides Hawaiʻi residents with an informational right to privacy that protects against disclosure of their sensitive personal information. *See Civ. Beat L. Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu*, 144 Haw. 466, 480, 445 P.3d 47, 61 (2019).

Redaction may also be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and

---

[5] *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015-16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561-63 (M.D. Pa. 2019).

vulnerable to abuse."[6] *Id.* The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including that "[i]t is not claimed that these official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III of the CRA must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Hawaiʻiʻi voters and civic organizations is present here. *See* Ex. 2 to Mot. to Intervene, Decl. of Camron Hurt ¶¶ 4, 6, 10-13; Ex. 3 to Mot. to Intervene, Decl. of Neil Abercrombie ¶¶ 5-10; Ex. 4 to Mot. to Intervene, Decl. of Katherine Hammes ¶¶ 3-10.

---

[6] The United States itself has explained that the NVRA does not prohibit the States from redacting "uniquely sensitive information" when disclosing voting records. *See, e.g.*, U.S. Amicus Br., *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27-28; U.S. Amicus Br. at 28, *Pub. Int. Legal Found. v. Schmidt*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records."); U.S. Amicus Br., *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283, at *11, *25-26.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. No matter the statutory mechanism, conditioning the right to vote on the release of voters' sensitive private information "creates an intolerable burden on that right." *Long*, 682 F.3d at 339 (citation omitted); *cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281-82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledge that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.

Thus, even had the United States provided a valid statement of the basis and the purpose for its records demand (which it failed to do here), sensitive personal identifying information, including Social Security numbers and driver's license numbers, should similarly be redacted.

## II.    THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION OF ITS CRA CLAIM.

The United States makes expansive claims that Title III of the CRA universally "displaces the Federal Rules of Civil Procedure by creating a 'special statutory proceeding'" where "[a]ll that is required is a simple statement by the Attorney General" that "a written demand for Federal election records and papers

19

covered by the statute" was made, "explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Mem. in Supp. of U.S. Mot. to Compel Prod. ("Mot. to Compel"), Dkt. No. 5-1 at 5; *see also* Compl. ¶¶ 1-4. This argument is contrary to the Federal Rules and rests entirely on a single set of non-binding cases decided more than sixty years ago, in the early 1960s, in a different circuit and a drastically different historical context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* Compl. ¶¶ 1-4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue." U.S. Mot. to Compel at 4 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit— which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[7] In these states, election officials and others notoriously used every possible means to block Black Americans from registering to vote.[8] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written

---

[7] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025).

[8] *See generally, e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[9]

By contrast, here, more than sixty years later, the context of *this* records request could not be more different. The United States has invoked the CRA—which was enacted to "secure a more effective protection of the right to vote"[10]—for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making extraordinary demands for sensitive personal information. Even more alarming, as the Officer observed in declining to provide the requested records, HI Ltr. at 8, there is extensive reporting that the purported basis and purpose of DOJ's request are likely pretextual, and that the data at issue is in fact being sought for unlawful ends. *See id.* at 6-8; *see also* Mot. to Intervene at 7-10 & nn.3-7.

---

[9] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging in the context of Title III of the CRA that while "[t]he right of free examination of official records is the rule," there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[10] *See* U.S. Dep't of Just., C.R. Div., *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH; H.R. Rep. No. 86-956, at 7 (1959).

Nothing in the text of Title III of the CRA insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307-08 (1981) (citation and quotation marks omitted). Just two years after *Lynd*, the Court held that proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57-58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) (the "district court . . . *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data[.]" (emphasis added)), *with* 52 U.S.C. § 20705 (the "district court . . . *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)).

Even in *Lynd*, the court in explaining its findings noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306

F.2d at 231. The court also noted that Section 305 of the CRA authorizes only jurisdiction by "appropriate process" to compel document production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal identifying information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before the passage of federal laws protecting and constraining access to personal information,[11] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated the possibility that the "duty to issue protective orders" would arise for certain records requests under the CRA, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of Hawaiʻi voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private"

---

[11] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

information, without *any* review of its statutorily required statement of the basis and the purpose for its demand, would go even further than *Lynd* did—in a context where, very much unlike in *Lynd*, the basis and purpose are not inarguably clear but appear pretextual.

The Court should dismiss the complaint before it takes any briefing on the United States' motion to compel and without ruling on that motion. Alternatively, to the extent that this Court considers the United States' motion to compel, it should deny that motion. As the court presiding over the federal government's similar action in California has already recognized, the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Ex. 6 to Mot. to Intervene, Hr'g Tr. at 5:3-9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id*., and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Ex. 7 to Mot. to Intervene, Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

The United States' request for Hawaiʻi's full and unredacted electronic voter file should be denied and the complaint dismissed.

Dated: Honolulu, Hawaiʻi, January 14, 2025.

Respectfully submitted,

*/s/ Emily M. Hills*
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM
11020
ACLU of Hawaiʻi Foundation
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
wkim@acluhawaii.org
ehills@acluhawaii.org

MEGAN C. KEENAN*
American Civil Liberties Union
Foundation
915 15th St. NW
Washington, DC 20001
T: (347) 714-1530
F: (332) 234-9285
mkeenan@aclu.org

THERESA J. LEE*
SOPHIA LIN LAKIN*
American Civil Liberties Union
Foundation
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2500
F: (332) 234-9285
tlee@aclu.org
slakin@aclu.org

*Application for pro hac vice admission forthcoming*

*Attorneys for Proposed Intervenors Common Cause, Neil Abercrombie, and Katherine Hammes*

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br>v.<br><br>SCOTT NAGO, in his official capacity as Chief Elections Officer for the State of Hawaii,<br><br>*Defendant.* | No. 1:25-cv-00522-LEK-RT<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS** |

The foregoing memorandum does not exceed the twenty-five (25) page limit of LR 7.4(a) and does not contain more than 6,250 words, in compliance with LR 7.5(b). According to the computer software used to generate the document, this memorandum contains 6,232 words.

/s/ Emily M. Hills
EMILY M. HILLS 11208
JONGWOOK "WOOKIE" KIM 11020
ACLU of Hawaii Foundation
P.O. Box 3410
Honolulu, HI 96801
T: (808) 522-5905
F: (808) 522-5909
ehills@acluhawaii.org
wkim@acluhawaii.org