## TABLE OF CONTENTS

I.    BACKGROUND ........................................................................................2

    A.    This Case ....................................................................................2

    B.    The California and Oregon Cases ........................................................4

II.   LEGAL STANDARD ..................................................................................8

III.  ARGUMENT.............................................................................................9

    A.    Judicial efficiency strongly favors a stay. ...........................................9

    B.    The balance of hardships likewise favor a stay..................................13

IV.   CONCLUSION.........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Aleisa v. Square, Inc.*,
  493 F. Supp. 3d 806 (N.D. Cal. 2020) ...................................................12

*Chinaryan v. City of Los Angeles*,
  122 F.4th 823 (9th Cir. 2024) ...................................................... 8, 9, 13

*Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*,
  669 F. Supp. 3d 907 (N.D. Cal. 2023) .................................................12

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ...........................................................8, 16

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ..............................................................14

*Erceg v. LendingClub Corp.*,
  475 F. Supp. 3d 1071 (N.D. Cal. 2020) ...............................................12

*Ernest Bock, LLC v. Steelman*,
  76 F.4th 827 (9th Cir. 2023) ................................................................9

*Finder v. Leprino Foods Co.*,
  No. 1:13-CV-02059-AWI-BAM,
  2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) ......................................16

*Flores v. Bennett*,
  675 F. Supp. 3d 1052 (E.D. Cal. 2023) .................................... 12, 13, 16

*Hawaiʻi v. Trump*,
  233 F. Supp. 3d 850 (D. Haw. 2017)...................................... 11, 13, 15

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) ..................................................... 8, 9, 10

*Kyne v. Ritz-Carlton Hotel Co., L.L.C.*,
  835 F. Supp. 2d 914 (D. Haw. 2011).....................................................12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).......................................................... 9, 13, 15, 16

*Leyva v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ...................................................................9

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ................................................. 9, 10, 16

*Manriquez v. DeVos*,
  No. 17-CV-07210-SK, 2018 WL 5316174 (N.D. Cal. Aug. 30, 2018) ..............13

*Peck v. County of Orange*,
  528 F. Supp. 3d 1100 (C.D. Cal. 2021) ...............................................12

*Petricevic v. Shin*,
  No. 20-00283 LEK-WRP, 2022 WL 1137156 (D. Haw. Apr. 18, 2022) ...........14

*Tejada v. Deutsche Bank Nat'l Trust Co.*,
  No. 10-00136 SOM/KSC, 2011 WL 3240276 (D. Haw. July 27, 2011) ...........14

*United States v. Aguilar*,
  No. 3:25-cv-00728-ART-CLB (D. Nev.) .................................................8

*United States v. Fontes*,
  No. 2:26-cv-00066-SMB (D. Ariz.) ......................................................8

*United States v. Hobbs*,
  No. 3:25-cv-06078-SKV (W.D. Wash.) .................................................8

*United States v. Oregon*,
  No. 6:25-cv-01666-MTK (D. Or.) ............................................... passim

*United States v. Weber*,
  No. 2:25-cv-09149-DOC-ADS,
  2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................................. passim

*Webb v. Trader Joe's Co.*,
  999 F.3d 1196 (9th Cir. 2021) ...........................................................15

## Constitutional Provisions

U.S. Const., amend. I ........................................................................6

## Statutes

5 U.S.C. § 552a ...............................................................................3

52 U.S.C. § 20510 ................................................................................3

52 U.S.C. § 20701 ................................................................................3

52 U.S.C. § 21083 ................................................................................3

52 U.S.C. § 21111 ................................................................................3

Civil Rights Act of 1960 ................................................................ passim

Driver's Privacy Protection Act of 1994 ...................................................6

E-Government Act of 2002 ......................................................................6

Help America Vote Act of 2002 ....................................................... passim

National Voter Registration Act of 1993 ........................................... passim

Privacy Act of 1974 ...........................................................................3, 6

**Rules**

Local Rule 7.8 .....................................................................................8

**Secondary Authorities**

Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests
    for Voter Information*, Brennan Center for Justice (Jan. 30, 2026),
    https://www.brennancenter.org/our-work/research-reports/tracker-
    justice-department-requests-voter-information ......................................2

Press Release, Office of Public Affairs, U.S. Department of Justice,
    Justice Department Sues Four Additional States and One Locality for
    Failure to Comply with Federal Election Laws (Dec. 12, 2025),
    https://www.justice.gov/opa/pr/justice-department-sues-four-
    additional-states-and-one-locality-failure-comply-federal ...................15

Press Release, Office of Public Affairs, U.S. Department of Justice,
    Justice Department Sues Oregon and Maine for Failure to Provide
    Voter Registration Rolls (Sept. 16, 2025),
    https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-
    maine-failure-provide-voter-registration-rolls......................................2

Press Release, Office of Public Affairs, U.S. Department of Justice,
    Justice Department Sues Six Additional States for Failure to Provide
    Voter Registration Rolls (Dec. 2, 2025),
    https://www.justice.gov/opa/pr/justice-department-sues-six-additional-
    states-failure-provide-voter-registration-rolls......................................................7

Press Release, Office of Public Affairs, U.S. Department of Justice,
    Justice Department Sues Six States for Failure to Provide Voter
    Registration Rolls (Sept. 25, 2025),
    https://www.justice.gov/opa/pr/justice-department-sues-six-states-
    failure-provide-voter-registration-rolls.................................................................6

Press Release, Office of Public Affairs, U.S. Department of Justice,
    Justice Department Sues Virginia for Failure to Produce Voter Rolls
    (Jan. 16, 2026), https://www.justice.gov/opa/pr/justice-department-
    sues-virginia-failure-produce-voter-rolls..............................................................2

## MEMORANDUM IN SUPPORT OF MOTION

This case is part of the United States' "effort to receive the full voter registration files of millions of voters across the entire country." *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *4 (C.D. Cal. Jan. 15, 2026). So far, the Department of Justice "has sent demands for complete copies of statewide voter registration files to at least 43 states and Washington, DC." *Id.* In defense of their residents' privacy and voting rights, states like Hawaiʻi have resisted this federal overreach. In turn, the United States has filed lawsuits against more than 20 jurisdictions, *id.*, demanding the production of confidential voter data under a novel reading of a 1960 civil rights statute. Not only do these requests "go[] far beyond what Congress intended" when it enacted that statute, but they also "threaten[] the right to vote which is the cornerstone of American democracy." *Id.* at *20.

The first two district courts to address these lawsuits on the merits have soundly rejected the United States' arguments. Both are within the Ninth Circuit, and Defendant expects that appeals will be filed from both. Virtually all of the arguments and defenses that are likely to be raised in this case are also likely to be addressed in those Ninth Circuit appeals. Thus, to avoid unnecessary and duplicative proceedings and to promote judicial economy, Defendant respectfully requests that the Court stay this case pending the disposition of the expected appeals.

## I.    BACKGROUND

### A.    This Case

"Since May, the Justice Department has demanded that nearly every state and Washington, DC, hand over election-related records and data, such as full copies of statewide voter registration lists[.]"[1] In September, the United States sued Oregon and Maine for refusing to comply with its demands.[2] It has since filed suits against 22 other states and the District of Columbia.[3] "It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database[,]" although it has represented to courts that its objective is "voter roll maintenance enforcement and compliance[.]" *Weber*, 2026 WL 118807, at *10.

Defendant Scott Nago is Hawaii's chief elections officer. In that capacity, he administers Hawaii's statewide voter registration list, which contains "the name and

---

[1]    Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Jan. 30, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2]    Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls.

[3]    Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Virginia for Failure to Produce Voter Rolls (Jan. 16, 2026), https://www.justice.gov/opa/pr/justice-department-sues-virginia-failure-produce-voter-rolls.

registration information of every legally registered voter in the State[.]" 52 U.S.C. § 21083(a)(1)(A).

On September 8, 2025, Assistant Attorney General Harmeet Dhillon sent a letter to Defendant asking that he produce an electronic copy of Hawaii's statewide voter registration list "contain[ing] *all fields*," including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under [the Help America Vote Act (HAVA)] to register individuals for federal elections." ECF No. 5-2 at 2. AAG Dhillon's letter claimed that she was requesting the list "to assess [Hawaii's] compliance with the statewide [voter registration list] maintenance provisions of the [National Voter Registration Act (NVRA)]." *Id.* The letter stated that the request was pursuant to Section 11 of the NVRA, 52 U.S.C. § 20510; Section 401 of HAVA, 52 U.S.C. § 21111; and Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20701–20706. *Id.* at 2–3.

The Hawaiʻi Department of the Attorney General sent a response to AAG Dhillon, informing her that state law precluded compliance with the request. *Id.* at 6. The response indicated that the federal statutes cited in her letter appeared to neither authorize her request nor require Hawaiʻi to produce an electronic copy of its statewide voter registration list. *Id.* at 6–7. The response also questioned whether the request complied with the requirements of the Privacy Act, 5 U.S.C. § 552a. *Id.*

3

at 7. And it expressed concern about public reporting that the Department of Justice was establishing a national voting database, contrary to its stated purpose of ensuring Hawaii's compliance with the NVRA and HAVA. *Id.* at 7–8.

After a brief exchange of emails on December 1 and 2, 2025, *see id.* at 10, 12, the United States filed this suit. Its complaint alleges that Defendant's refusal to provide the records requested in the September 8 letter violates the CRA, requests a declaration to that effect, and also requests an order requiring Defendant to produce an electronic copy of the statewide voter registration list with all fields. ECF No. 1 at 8–9. Separately, the United States filed a motion for an order to compel seeking the same production. ECF No. 5.

## B.    The California and Oregon Cases

*Weber* likewise began with a request from the Department of Justice for "an electronic, unredacted[] copy of California's statewide voter registration list[,]" among other things. 2026 WL 118807, at *2. California Secretary of State Shirley Weber refused to make an unredacted copy of her state's list electronically available. *Id.* at *3. The United States filed suit. *Id.* at *5. California and intervenor-defendants representing California voters moved to dismiss. *Id.* at *5–*6. Those motions were granted, and the United States' complaint was dismissed without leave to amend. *Id.* at *20.

The California district court characterized the United States' efforts as an "unprecedented and illegal" affront to the fundamental right to vote. *Id.* at *1. As relevant here, it first rejected the United States' argument that Title III of the CRA "transform[s] an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Id.* at *8. It found "[n]othing in the text of Title III" to support this argument, holding instead that a demand for documents is governed by the Federal Rules of Civil Procedure. *Id.* It therefore denied the United States' motion to compel. *Id.*

As for the merits of the CRA argument, the California district court held that the United States had failed to establish a basis for its request, as that law requires. *Id.* at *8–10. The statute, the district court held, requires the United States to provide reasoning "regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law." *Id.* at 9. But the United States "failed to provide an explanation for why it believed the NVRA was violated in its letter" to Secretary Weber, and it gave "no explanation for why unredacted voter files for millions of Californians, an unprecedented request, was necessary for the DOJ's investigation." *Id.* The district court further held that it was not required to accept the United States' "pretextual" explanation that it was demanding sensitive voter information to ensure NVRA compliance when public information, including representations by the Department of Justice itself, indicated

that the records would be compiled into a national database and could be used for broader immigration enforcement. *Id.* at *10–12.

In addition, the district court held that the United States' request "violate[d] a plethora of federal privacy laws including the Privacy Act, E-Government Act, and Driver's Privacy Protection Act (DPPA), by failing to meet the requirements under each statute." *Id.* at *17. As to the Privacy Act, the court held that the request impermissibly sought records regarding Americans' First Amendment activities, and that a system of records notice required by that act had not been published. *Id.* at *17–18. As to the E-Government Act, the court held that the United States had failed to conduct a privacy impact statement prior to initiating a collection of personally identifiable information, as that law requires. *Id.* at *19. And as to the DPPA, the court held that it prevented the disclosure of personal information obtained by the California Department of Motor Vehicles, and that no exception applied. *Id.*[4]

---

[4]    The *Weber* district court also dismissed the United States' claims brought directly under the NVRA and HAVA. 2026 WL 118807, at *12–17. Although AAG Dhillon's letter to Defendant cited the NVRA and HAVA as authority for her request, ECF No. 5-2 at 2–3, there are no NVRA or HAVA claims in this case. It appears that the United States has abandoned its argument that it has direct claims under the NVRA and HAVA in its later-filed cases. *Compare* Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Six States for Failure to Provide Voter Registration Rolls (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls (containing links to six complaints in which claims were brought directly under the NVRA, HAVA, or both, in addition to the CRA), *with* Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Six Additional States for Failure to Provide Voter Registration

A similar story has played out in Oregon. The United States requested, among other things, an electronic copy of Oregon's statewide voter registration list in July 2025. Oregon Compl. at ¶ 35.[5] Oregon's Secretary of State refused to produce it, arguing that doing so is not required under federal law and that the United States must comply with federal privacy statutes and state law. *Id.* at ¶¶ 55–56. The United States sued Oregon and its Secretary of State, alleging violations of the NVRA, HAVA, and the CRA. *Id.* at ¶¶ 65–74.

On January 14, 2026, the Oregon district court held a hearing on two motions to dismiss, which it took under advisement. Minutes of Proceedings, ECF No. 63, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or.). On January 26, 2026, the district court held a second hearing at which it asked counsel to address a letter sent by Attorney General Pamela Bondi to Minnesota Governor Tim Walz in which she discussed providing the Department of Justice with access to Minnesota's voter rolls in connection with ongoing ICE enforcement activities in Minnesota. Order, ECF No. 66, *Oregon*. At that hearing, the district court granted the motions to

---

Rolls (Dec. 2, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-additional-states-failure-provide-voter-registration-rolls (containing links to six complaints in which claims were brought solely under the CRA).

[5]    A link to a copy of the Oregon complaint is available in the September 26, 2025 press release cited in footnote 2. The Oregon complaint can also be found at the following link: https://www.justice.gov/crt/media/1414291/dl?inline.

dismiss and indicated that a formal written opinion was forthcoming. Minutes of Proceedings, ECF No. 68, *Oregon*.

Defendant expects that the United States will appeal both *Weber* and *Oregon* to the Ninth Circuit. In the course of their Local Rule 7.8 discussions, Defendant's counsel shared that expectation with counsel for the United States. Counsel for the United States did not refute the expectation, but instead simply noted that a notice of appeal had not yet been filed in *Weber*, and that *Oregon* had not yet been decided at the time of the discussion.

Dozens of similar lawsuits have been filed in states and municipalities across the country, including three more against states in the Ninth Circuit: *United States v. Hobbs*, No. 3:25-cv-06078-SKV (W.D. Wash.) (filed December 2, 2025); *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB (D. Nev.) (filed December 11, 2025); and *United States v. Fontes*, No. 2:26-cv-00066-SMB (D. Ariz.) (filed January 6, 2026). Those three cases, like this one, are still in the preliminary stages.

## II.    LEGAL STANDARD

A district court "possesses 'inherent authority to stay federal proceedings pursuant to its docket management powers.'" *Chinaryan v. City of Los Angeles*, 122 F.4th 823, 825 (9th Cir. 2024) (quoting *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024)). "The exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

"When considering whether to grant such a stay, courts must weigh three non-exclusive factors: '(1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law."'" *Chinaryan*, 122 F.4th at 825 (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023)). This type of stay is sometimes called a "*Landis* [s]tay[.]" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)).

## III.   ARGUMENT

### A.    Judicial efficiency strongly favors a stay.

The third *Landis* stay factor, "which courts refer to as 'judicial efficiency,'" *PG&E*, 100 F.4th at 1085, strongly supports a stay of this case.

The Ninth Circuit has "repeatedly held that a district court does not abuse its discretion by staying litigation for efficiency reasons pending resolution of other related proceedings." *Id.* at 1086. In fact, it has said that the issues in the related proceedings "do not need to be 'necessarily controlling of the action before the [district] court'" for a stay to be appropriate. *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)). It is enough if "the district court could receive 'considerable assistance in resolving'" the action before it from

another court's "assessment of common issues." *Id.* (quoting *Lockyer*, 398 F.3d at 1110).

That standard is easily met, if not exceeded, here. There is extensive overlap between the relevant facts and legal claims in this case, *Weber*, and *Oregon*, and any decision of the Ninth Circuit would be controlling, not merely helpful. Many, if not all, of the core legal questions this case will present are highly likely to be considered and answered in the expected appeals of *Weber* and *Oregon*. Those questions include: whether Title III of the CRA permits a "special statutory proceeding" outside the bounds of the Federal Rules of Civil Procedure, *Weber*, 2026 WL 118807, at *8; whether a request for a state's voter registration list states a basis for the request when it includes no "specific, articulable facts pointing to the violation of federal law[,]" *id.* at *9; whether a court must facially accept the United States' representation that it is trying to ensure compliance with the NVRA when "representations made by the DOJ elsewhere paint a starkly different picture[,]" *id.* at *10; and whether a request for a state's unredacted voter roll complies with federal privacy laws, *see id.* at *17–19. There are no obvious factual differences between this case, *Weber*, and *Oregon*, nor do the claims or defenses in the three cases suggest different outcomes in the Ninth Circuit.[6]

---

[6]    As noted in footnote 6, the United States brought NVRA and HAVA claims in California and Oregon that it did not raise in this case, but there are no claims in *this* case that were *not* made in the California and Oregon cases. Additionally,

Under these circumstances, staying this case would be eminently sensible. As Chief Judge Watson explained in *Hawai'i v. Trump*, when there is "significant overlap of the issues" between a case before this Court and one in the Ninth Circuit, granting a stay "pending the outcome of appellate proceedings . . . facilitate[s] the orderly course of justice." 233 F. Supp. 3d 850, 855 (D. Haw. 2017). When action by the Ninth Circuit "will likely be dispositive of, or at least dispositive of many of the issues presented by" a district court case, and "[t]he appellate court's binding decisions . . . could obviate the need for this Court to decide the same issues[,] . . . it makes little sense to expend the resources necessary for a full presentation of those same issues in this forum while awaiting guidance from the appellate court." *Id.* Instead, "[t]he more efficient course is to await a pronouncement from the governing appellate bodies, at which point the bulk of the determinative issues may very well be settled in most material respects." *Id.*

Staying this case would accord with practice throughout the Ninth Circuit, where district courts "typically stay cases when the outcome of another proceeding will"—or probably will—"have preclusive effect on the pending issues." *Flores v.*

---

although California argued in *Weber* that the case was filed in the wrong judicial district—an issue which could not arise in Hawai'i—it expressly invited the district court to nonetheless issue a decision on the merits, which the court did. 2026 WL 118807, at *7–8. Defendant does not, however, dispute the possibility that there may be additional defenses available to him that were not available to the California and Oregon defendants.

11

*Bennett*, 675 F. Supp. 3d 1052, 1063 (E.D. Cal. 2023); *see, e.g.*, *Clear Blue Specialty Ins. Co. v. Ozy Media, Inc.*, 669 F. Supp. 3d 907, 932 (N.D. Cal. 2023) ("A stay promotes the orderly cause of justice where the underlying proceedings are likely to decide or contribute to the issues before this Court."); *Peck v. County of Orange*, 528 F. Supp. 3d 1100, 1106 (C.D. Cal. 2021) ("Unless the Court stays litigation on the *Monell* claim, the trial may be rendered moot by the Ninth Circuit's ruling on appeal."); *Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 815 (N.D. Cal. 2020) ("First, and most importantly, issuing a stay until the Supreme Court decides *Duguid II* would greatly simplify a key question of law in the instant case[.]"); *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1076–77 (N.D. Cal. 2020) ("It would be a waste of judicial resources to try to guess . . . how the California Supreme Court will decided these issues, or to permit discovery and further proceedings, when the *Smith* ruling easily could be determinative of Plaintiff's claims in whole or in part."); *Kyne v. Ritz-Carlton Hotel Co., L.L.C.*, 835 F. Supp. 2d 914, 925 (D. Haw. 2011) ("It would be inefficient and a waste of resources to continue to trial and potentially the appellate process, and then have the Hawai'i Supreme Court issue a decision inapposite to this Court's ruling.").

This Court should do the same in this case. Given the expected appeals of *Weber* and *Oregon* to the Ninth Circuit, a stay would "permit[] the Court and the parties to benefit from any appellate rulings that are binding on this district court"

while reducing "[t]he risk of inconsistent rulings and duplicative litigation[.]" *Hawaiʻi v. Trump*, 233 F. Supp. 3d at 856. Considerations of judicial efficiency call for a stay.

### B.    The balance of hardships likewise favor a stay.

The first *Landis* factor considers the possible damage resulting from a stay, and the second assesses the potential hardship from proceeding with a case. *Chinaryan*, 122 F.4th at 825. In *Hawaiʻi v. Trump*, Chief Judge Watson granted a stay where the third *Landis* factor "weigh[ed] significantly in favor of a stay[,]" even though the first factor "d[id] not weigh strongly against the grant of a discretionary stay" because any prejudice was "minimal" and the second factor was "neutral." 233 F. Supp. 3d at 853–56; *see Flores*, 675 F. Supp. 3d at 1064–65 (granting a stay where judicial efficiency considerations "outweigh[ed] any potential harm[,]" and citing two other cases doing the same). In this case, the third factor alone is reason enough to grant a stay. But the first and second factors, which ask a court to "balance the hardships of the parties if the action is stayed or if the litigation proceeds[,]" *Flores*, 675 F. Supp. 3d at 1060 (quoting *Manriquez v. DeVos*, No. 17-CV-07210-SK, 2018 WL 5316174, at *2 (N.D. Cal. Aug. 30, 2018)), also support Defendant's motion.

As to the first factor, the United States would suffer no harm as the result of a stay. To the contrary, it will enjoy the same efficiency benefits as Defendant and the Court. A stay would leave the United States no worse off than if this litigation were

13

to proceed; in both scenarios, the Ninth Circuit would have the final word, as its resolution of *Weber* and *Oregon* would control. And given that the requested stay would be tied to appellate proceedings, it would be of a "short, or at least reasonable, duration," rather than "indefinite in nature." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007). Indeed, the Ninth Circuit, like the *Weber* district court, may recognize that these cases "concern[] matters of national importance" and great public interest, making it "critical that a decision is rendered on the merits" in a timely manner. 2026 WL 118807, at *7. Because "the Court 'has no reason to think the [Ninth Circuit] will take an unreasonable amount of time to decide [the United States'] appeal[,]'" a stay pending the resolution of the appeal is appropriate. *Petricevic v. Shin*, No. 20-00283 LEK-WRP, 2022 WL 1137156, at *6 (D. Haw. Apr. 18, 2022) (quoting *Tejada v. Deutsche Bank Nat'l Trust Co.*, No. 10-00136 SOM/KSC, 2011 WL 3240276, at *4 (D. Haw. July 27, 2011)).

The United States may argue that a delay in its receipt of Hawaii's statewide voter registration list will somehow cause it harm. Defendant of course contests that the United States is entitled to the list in the first place. The Ninth Circuit's expected resolution of that dispute is the strongest reason *for* a stay. But even assuming Defendant does have to produce the list to the United States, there is no reason to believe that it must do so urgently. In its correspondence with Defendant and in its

filings with this Court, the United States has identified nothing that suggests Hawaiʻi
is not complying with any federal election law. Rather, it seems that the United
States is on a nationwide "fishing expedition" based on nothing but "gross
speculation" that Hawaiʻi (and roughly half the other states in the country) *may* be
out of compliance with federal law. *Weber*, 2026 WL 118807, at *15 (quoting *Webb
v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021)).

Moreover, the United States' own behavior suggests it does not view this case
as in need of particularly swift resolution. After its last communication with Hawaiʻi
on December 2, 2025, it waited over a week to file suit, even though its initial filings
were essentially copies of filings used in other states.[7] It then waited over a month
to actually serve Defendant, then five more days to file proof of service, even after
the Court said it would not set a hearing on the motion to compel until after such
proof was filed. ECF Nos. 6, 29, 30.

As to the second *Landis* stay factor, a defendant is "only required to 'make
out a clear case of hardship' if there is a 'fair possibility that the stay . . . will work
damage to someone else[.]'" *Hawaiʻi v. Trump*, 233 F. Supp. 3d at 855 (quoting

---

[7]    Press Release, Office of Public Affairs, U.S. Department of Justice, Justice
Department Sues Four Additional States and One Locality for Failure to Comply
with Federal Election Laws (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-
department-sues-four-additional-states-and-one-locality-failure-comply-federal.

*CMAX*, 300 F.2d at 268). Here, because the United States will suffer no harm from a stay, Defendant does not need to show that it will suffer harm absent a stay.

Even so, Defendant will be prejudiced if the case goes forward. While "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity[,]'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255), a district court may weigh the litigation burden of "'substantial' . . . pretrial motions practice on matters that could be mooted by a pending appeal" when conducting the *Landis* balancing test, *Flores*, 675 F. Supp. 3d at 1062 (quoting *Finder v. Leprino Foods Co.*, No. 1:13-CV-02059-AWI-BAM, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017)). And beyond the burdens of litigation, Defendant faces the possibility of an unprecedented order requiring him to produce an electronic copy of his state's full, unredacted statewide voter registration list.

Finally, although the *Landis* factors decisively favor a stay, the United States may argue that this case should not be stayed because Title III of the CRA displaces the Federal Rules of Civil Procedure and requires this Court to summarily order that Defendant produce the requested records with no further process. *See generally* ECF No. 5. However, the propriety of this "special statutory proceeding" will itself be a contested issue in this case, and, because it was flatly rejected in *Weber*, it is already something the Ninth Circuit is likely to address in the appeal arising out of California. 2026 WL 118807, at *8.

16

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to stay.

DATED:  Honolulu, Hawai'i, February 2, 2026.

/s/ *Thomas J. Hughes*
KALIKO'ONĀLANI D. FERNANDES
THOMAS J. HUGHES
ANDREW Z.M. TEOH
AARON H. SCHULANER

Attorneys for Defendant
SCOTT NAGO