ANNE E. LOPEZ                 7609
Attorney General of Hawaiʻi

KALIKOʻONĀLANI              9964
D. FERNANDES
Solicitor General
THOMAS J. HUGHES           11059
ANDREW Z.M. TEOH           12098
Deputy Solicitors General
Department of the Attorney General,
  State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi 96813
Tel: (808) 586-1360
Email: kaliko.d.fernandes@hawaii.gov
       thomas.j.hughes@hawaii.gov
       andrew.zm.teoh@hawaii.gov

Attorneys for Defendant
SCOTT NAGO

AARON H. SCHULANER        6954
General Counsel
Office of Elections,
  State of Hawaiʻi
802 Lehua Avenue
Pearl City, Hawaiʻi 96782
Tel: (808) 586-1255
Email: aaron.h.schulaner@hawaii.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT NAGO, in his Official Capacity as Chief Election Officer for the State of Hawaiʻi,<br><br>Defendant. | No. 1:25-cv-00522-LEK-RT<br><br>**DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION TO STAY [ECF NO. 75]; CERTIFICATE OF SERVICE**<br><br>Judge: Hon. Leslie E. Kobayashi |

## DEFENDANT'S REPLY IN SUPPORT OF
## RENEWED MOTION TO STAY [ECF NO. 75]

Last week, the Ninth Circuit granted the United States' motions to expedite the appeals arising from the parallel California and Oregon cases. As a result, those appeals will be fully briefed by the end of April, and will be argued in mid-May. Although it does not dispute that the resolution of those appeals is likely to be highly relevant to, and perhaps even determinative of, this case, the United States persists in opposing Defendant's motion for a brief stay pending the appeals.

The United States' cursory opposition memorandum provides no good reason to deny the requested stay. Its vague references to election integrity do nothing to dispel the fact that this case is part of a "fishing expedition" for evidence of noncompliance with the NVRA and HAVA. *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *15 (C.D. Cal. Jan. 15, 2026). There is no reason to believe that a temporary stay of this case will cause harm because there is no reason to believe that Hawaiʻi is out of compliance with federal law. In the absence of any harm from a stay, and with a high likelihood that both the Court and the parties will "benefit from . . . appellate rulings that are binding on this district court[,]" *Hawaiʻi v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017), the soundest course is to let the Ninth Circuit rule first. Defendant's motion should be granted.

## I.    BACKGROUND

The United States filed a consolidated opposition to Defendant's and Intervenor-Defendant's motions to dismiss on March 6. ECF No. 78. Although the Court's briefing order told the United States that its "[o]pposition *memoranda*" were due that day, ECF No. 56 (emphasis added), the United States, without requesting leave to do so, filed a single, consolidated opposition that exceeds this Court's page and word limits for memoranda in opposition to a motion, ECF No. 78; LR 7.4(a), (b). The only authority the United States cited in support of this maneuver was a non-existent "L[ocal ]R[ule] 7.1(a)(3)." ECF No. 78 at 5 n.1.[1]

In the *Weber* and *Oregon* appeals, the Ninth Circuit granted the United States' motions to expedite on March 17. Order, Dkt. 37, *United States v. Weber*, No. 26-1232 (9th Cir. filed Mar. 3, 2026); Order, Dkt. 25, *United States v. Oregon*, No. 26-1231 (9th Cir. filed Mar. 3, 2026). It ordered the opening briefs to be filed by March 18, the answering briefs to be filed by April 17, and the reply briefs to be filed by April 24. *Id.* It denied the motions to consolidate, but scheduled both cases for oral argument on May 19. *Id.*; Notice of Oral Argument, Dkt. 44, *Weber*, No. 26-1232 (9th Cir.); Notice of Oral Argument, Dkt. 31, *Oregon*, No. 26-1231 (9th Cir.).[2]

---

[1]    If the motion to stay is denied, Defendant reserves the right to move to strike Defendant's opposition for violation of the Local Rules.

[2]    The Sixth Circuit appeal arising out of the corresponding Michigan case has also been expedited, with briefing to be completed by April 20. Order, Dkt. 20, *United States v. Benson*, No. 26-1225 (6th Cir. filed Feb. 27, 2026).

## II.   ARGUMENT

### A.   The United States all but concedes that judicial efficiency favors a stay.

In his original and renewed motions, Defendant explained that the third *Landis* factor, which focuses on judicial efficiency, strongly supports a stay of this case "because there is 'significant overlap of the issues' between this case and the *Weber* and *Oregon* appeals[.]" ECF No. 75-1 at 4 (quoting *Hawai'i v. Trump*, 233 F. Supp. 3d at 855); *see* ECF No. 44-1 at 14–18.

The United States does not disagree. In fact, it acknowledges that "[t]his case poses a nearly identical dispute of statutory interpretation as the cases of [*Weber*] and [*Oregon*]." ECF No. 79 at 2. Judicial efficiency plainly warrants a stay.

The United States' counterargument on the third *Landis* factor is difficult to discern. Under the heading, "The orderly course of justice favors denying a stay[,]" the United States says that seeking Hawaii's voter roll is "an investigatory step" and argues that "it is important for the orderly administration of election integrity and litigation that the Attorney General be able to complete her oversight in an expeditious manner consistent with her duties under federal election statutes." *Id.* at 4–5. But the third *Landis* factor concerns the orderly course of justice "measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Chinaryan v. City of Los Angeles*, 122 F.4th 823, 825 (9th Cir. 2024) (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023)). Its focus is the complexity

3

of the case before the Court from which the stay is requested. It does not ask about the effect of a stay on the general subject of a case, like federal oversight of elections.

And in any event, the United States does not actually explain *how* a stay will affect the "orderly administration of election integrity" or the Attorney General's "duties under federal election statutes." ECF No. 79 at 4–5. Indeed, the United States says that the relief it seeks in this case "does not implicate any action related to voting, voter rolls, or other important 2026 Election mechanisms." *Id.* at 4. It is unclear how this case could be "important for the orderly administration of election integrity" while also "not implicat[ing]" voting or the administration of upcoming elections. *Id.* at 4–5. And it is even less clear how the relief the United States seeks— the transfer of a complete, unredacted copy of Hawaii's statewide voter registration list to the Department of Justice, ECF No. 1 at 9—would not be, at the very least, an "action related to . . . voter rolls," ECF No. 79 at 4. Whatever the United States means to say, this case, about its authority to demand that a state turn over its voter roll, should be stayed while "identical dispute[s]" are on appeal. *Id.* at 2.

**B.  The "damage" faced by the United States is, in its own telling, purely hypothetical.**

The first *Landis* factor calls on the Court to weigh "the possible damage which may result from the granting of a stay[.]" *Chinaryan*, 122 F.4th at 825 (quoting *Ernest Bock*, 76 F.4th at 842). As Defendant has demonstrated, the United States would not be harmed by a stay. ECF No. 44-1 at 18–20. The first factor also accounts

for the potential length of a stay. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007). Because the Ninth Circuit, at the United States' urging, has now expedited briefing and argument in the *Weber* and *Oregon* appeals, it is highly "likely the other proceedings will be concluded within a reasonable time[.]" *Id.* at 1066 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)).

Nonetheless, the United States says that "[a] stay *may* cause damage to federal elections." ECF No. 79 at 3 (emphasis added). That qualifying "may" is important because the United States does not dispute that "there is currently no allegation Hawaii is failing in its obligation to maintain its voter lists[.]" *Id.* Instead, the United States admits that it is using this case to investigate "possible violations" of federal law. *Id.* (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). Were the United States to receive the voter list it requests, and were that list to indicate that "Hawaii is deficient in its list maintenance practices[,]" then, it says, "an enforcement action *may* be necessary[.]" *Id.* (emphasis added).

These hypothetical harms fall far short of the type of prejudice for which the first *Landis* factor accounts. This factor considers whether there is at least "a fair possibility" that granting a party a stay "will work damage to some one else[.]" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (9th Cir. 2024) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The United States' complete speculation that

5

Hawaiʻi *might* be out of compliance with federal voting laws the State has been administering for several decades (something for which there is no evidence—not even an allegation), and that such non-compliance *might* lead to an enforcement action, comes nowhere near a fair possibility of harm.

The United States' argument also necessarily assumes that it will prevail on the merits of this case. Although the Attorney General has some limited statutory authority to enforce the NVRA and HAVA, *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *2–3 (D. Or. Feb. 5, 2026) (discussing 52 U.S.C. §§ 20510(a) and 21111), a stay of this case would only "frustrate[]" the Attorney General's "duty to ensure state compliance" with these laws if Title III of the CRA entitles her to a full, unredacted copy of Hawaii's statewide voter registration list, ECF No. 79 at 3. Whether she has such statutory entitlement is exactly what is at issue in this case (and in the *Weber* and *Oregon* appeals). The Court should not have to decide the merits of this case before determining whether it should await appellate court guidance on exactly the questions the case presents.

The United States also argues that rapid resolution of this case is necessary so that, in the event it decides to bring an enforcement action, it can do so before the 2026 election. *Id.* at 3–4. This argument has two major flaws.

First, it is highly doubtful whether continuing to litigate this case, rather than staying it, would lead to a quicker resolution. At this point, even if the Court were

to deny the motion to stay and reschedule the motions to dismiss for a hearing, that hearing (and the subsequent drafting of the Court's order) might be taking place as briefing in the *Weber* and *Oregon* appeals is wrapping up, or even as oral argument in those cases is approaching.[3] And even if the Court were to deny the motions to dismiss, that would not end the case. The Court would, at the very least, have to resolve the United States' motion to compel—something Defendant would argue can only occur after discovery. *See* ECF No. 71 at 22 n.7, 25–26.

Second, the United States indicates that any theoretical enforcement action would have to be brought before Hawaiʻi "must finish removing nonvoters from its rolls in a systematic process" due to the 90-day limit in 52 U.S.C. § 20507(c)(2)(A). ECF No. 79 at 4. The United States identifies the last removal day as August 4—91 days before the November 3 general election. *Id.* But it overlooks that the statute requires a state to complete any systematic removal of ineligible voters "not later than 90 days prior to the date of a primary or general election for Federal office[.]" 52 U.S.C. § 20507(c)(2)(A). Hawaiʻi holds its primary election for all offices, including congressional offices, on the second Saturday in August—this year, on August 8. Haw. Rev. Stat. §§ 12-1, 12-2. So the 90-day limit in 52 U.S.C.

---

[3]    At the time the hearing date and briefing schedule for the motions to dismiss were vacated, the hearing was scheduled 28 days out. *See* ECF Nos. 56, 77. Twenty-eight days from the filing of this brief is April 22—two days before the Ninth Circuit briefing closes in *Weber* and *Oregon*.

§ 20507(c)(2)(A) actually kicks in on May 10. It is inconceivable that both this case and a separate NVRA or HAVA enforcement action that has not yet been filed could be resolved by May 10, regardless of whether this case is stayed. And to the extent the United States is in any way prejudiced by this approaching deadline, it is worth recalling the weeks and months it allowed to pass between its communications with Defendant and the filing and serving of its complaint. *See* ECF No. 44-1 at 20.

The caselaw cited by the United States provides it with no additional support. It cites *Reynolds v. Sims*, 377 U.S. 533 (1964), for the proposition that accurate voter rolls protect eligible voters by ensuring that their votes are not diluted by the votes of ineligible voters. ECF No. 79 at 4. But this argument sneaks in yet another unsupported assumption. Ineligible voters do not dilute the votes of eligible voters just by appearing on a statewide voter registration list. They only do so if they illegally cast a ballot. Because the United States has no reason to believe that Hawaiʻi is failing to maintain its voter lists, it certainly has no reason to think that ineligible voters are illegally voting, or are likely to illegally vote, as a result.[4]

The United States also says that *Purcell v. Gonzalez*, 549 U.S. 1 (2006), would time bar an enforcement action. *Id.* But *Purcell* stands for the proposition that "lower federal courts should ordinarily not alter the election rules on the eve of an election."

---

[4]    This argument also shifts the focus of the *Landis* analysis from the potential harm faced by the United States to an alleged harm faced by eligible Hawaiʻi voters.

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020). It would not appear to have any effect on the Attorney General's ability to bring an enforcement action under the NVRA or HAVA. *See* ECF No. 79 at 4 (arguing that this case does not implicate "2026 Election mechanisms").

### C.    Defendant need not make a showing of harm.

As Defendant has previously explained, he is "only required to make out a clear case of hardship if there is a fair possibility that the stay will work damage to someone else." ECF No. 44-1 at 20 (internal quotation marks and ellipses omitted) (quoting *Hawaii v. Trump*, 233 F. Supp. 3d at 855). The United States does not dispute this as a legal matter, and, as discussed above, has not shown there is a fair possibility that it will be damaged by a stay. Thus, Defendant need not show that he will be harmed absent a stay.

The United States claims that Defendant will "not incur any additional obligations from the denial of a stay." ECF No. 79 at 4. This is not strictly true; even if defending a lawsuit does not, on its own, constitute a clear case of hardship, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), Defendant would have to continue briefing and arguing motions that might be mooted by the Ninth Circuit's decision in *Weber* and *Oregon* if there is no stay. And it is clearly not correct that Defendant will be subject to "the same obligations" "[r]egardless of which way the Court rules in this case," as the United States says. ECF No. 79 at 4.

It is true, however, that there is no reason for the Court to rule in this case when the

Ninth Circuit will shortly be addressing the exact same issues.

### III.    CONCLUSION

The Court should grant Defendant's renewed motion to stay.[5]

DATED:  Honolulu, Hawai'i, March 25, 2026.

/s/ *Thomas J. Hughes*

KALIKO'ONĀLANI D. FERNANDES
THOMAS J. HUGHES
ANDREW Z.M. TEOH
AARON H. SCHULANER

Attorneys for Defendant
SCOTT NAGO

---

[5]    Defendant's renewed motion requested in the alternative that the Court continue the April 3 motions hearing due to the unavailability of his counsel. ECF No. 75 at 2. The Court's March 6 minute order vacated that hearing date and therefore mooted Defendant's request for alternative relief. *See* ECF No. 77.